■ In the Matter of THOMAS GIBSON, Petitioner, v RICHARD J. KOEHLER, as Commissioner of Correction of the City of New York, et al., Respondents.—Determination of the respondent Commissioner of the Department of Correction dated December 28, 1988, which dismissed petitioner from his position as a correction officer, is unanimously confirmed, the petition denied and the proceeding brought pursuant to CPLR article 78 (transferred to this court by order of Sup Ct, NY County [Kristin Booth Glen, J.], entered June 28, 1989) is dismissed, without costs and without disbursements. The clerk is directed to enter judgment in favor of respondents dismissing the petition.

On November 3, 1986 petitioner tested positive for cocaine consumption and was suspended from active duty as a correc-

tion officer. On March 9, 1987, subsequent to his return to active duty, petitioner was ordered to submit to a further drug test pursuant to Department Directive 7501 (VI) which again indicated the use of narcotics. His employment having been terminated, petitioner challenges the propriety of the March 9, 1987 order directing him to submit to a drug test on the ground that no reasonable suspicion of petitioner's drug use had been established so as to justify the test directive.

We find the record before us contains substantial evidence to support reasonable suspicion that petitioner used illicit drugs on or about November 3, 1986. *(See, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 180.) The Warden and petitioner's supervising captain were justified in reasonably suspecting petitioner of drug intoxification on November 3, 1986 since petitioner, known to have tested positive in the past for drug use, was absent from duty without explanation for a two-hour period on November 3, 1986, was unable to determine the reason for his prisoner miscount and satisfactorily explain why two prisoners were not readied for their court appearances. Petitioner also was disheveled in appearance and erratic in behavior. The prison officials' reasonable suspicion of petitioner's drug use was, therefore, properly based upon specific objective facts, as well as inferences drawn from those facts in light of their experience *(see, Security & Law Enforcement Employees v Carey,* 737 F2d 187, 205).* While the prison officials' reasonable suspicion was in part based upon petitioner's prior positive drug testing in June 1986—a test which was subsequently declared invalid in March 1987, following a hearing—it is noted that the exclusionary rule does not preclude the use of all "illegally seized evidence in all proceedings or against all persons" *(United States v Calandra,* 414 US 338, 348). In this civil proceeding, application of the exclusionary rule to the instant facts would be inappropriate, particularly considering that its application does not outweigh societal costs of losing relevant and reliable evidence and that an appreciable deterring effect would not result *(see, United States v Janis,* 428 US 433, 454-458). The tests conducted on petitioner's urine samples were reliable and accurate *(see, Matter of Lahey v Kelly,* 71 NY2d 135, 143). Considering petitioner's two positive drug testings and his poor employment record the termination of his employment by the Commissioner is not so disproportionate as to be shocking to one's sense of fairness. *(See, Matter of Pell v Board of Educ.,* 34 NY2d 222, 233.) Concur—Kupferman, J. P., Ellerin, Wallach, Smith and Rubin, JJ.