OPINION OF THE COURT
Smith, J.
The issue presented on this appeal is whether evidence that is the product of an unlawful search by the Buffalo City Police, and is suppressed in a criminal prosecution, may be used in an administrative proceeding commenced by the Division of State Police.
On September 14, 1989, at approximately 2:00 a.m., two Buffalo City police officers observed petitioner and another man in the back seat of a parked car in a parking lot. The officers ordered the men out of the car and, upon a search, retrieved a small plastic baggie of marihuana from a console between the two front seats. Petitioner then identified himself as a State Trooper and stated "I’ve got a problem. * * * [T]he grass is my girl friend’s. She smokes the stuff all the time. * * * [P]lease g[i]ve me a break.” The officers issued petitioner a summons charging him with unlawful possession of marihuana (Penal Law § 221.05) and directing him to appear in Buffalo City Court the following day. Petitioner’s superiors were advised of the charge.
On September 26, 1989, the Superintendent of State Police served petitioner with charges and specifications alleging that he had violated State Police regulations by knowingly and unlawfully possessing marihuana and by acting in a manner tending to bring discredit upon the Division of State Police. Petitioner denied the charges and requested a hearing.
Before the hearing was held, Buffalo City Court granted the motions by petitioner to suppress all of the evidence and/or information that was acquired as a result of the search of the vehicle and to dismiss the criminal charge against him.
At the administrative hearing, petitioner objected to the admission of the marihuana and to any testimony concerning it. The Hearing Officer overruled the objection, found petitioner guilty of all the charges, and recommended that petitioner be dismissed from the Division of State Police. Respondent Superintendent of State Police accepted the recommendation and dismissed petitioner. Petitioner then commenced this *193 CPLR article 78 proceeding, seeking to annul the determination.
The Appellate Division annulled the determination, finding that it was "based upon evidence obtained through an illegal search and seizure * * * and [that] the fruits of an illegal search may not be used to support the imposition of civil penalties” (180 AD2d 186, 188). Two Justices dissented. We now reverse the judgment of the Appellate Division and reinstate the determination for the reasons that follow.
Respondent Superintendent maintains that he is not seeking a broad ruling that the exclusionary rule is not applicable to all disciplinary proceedings of police officers. Rather, respondent contends, applying the balancing approach endorsed by this Court, there would be no secondary deterrent effect in applying the exclusionary rule to this administrative proceeding, and the burden of excluding the evidence outweighs the benefit to society of obtaining the truth regarding a State Trooper’s possession of marihuana. Relying on Matter of Finn’s Liq. Shop v State Liq. Auth. (24 NY2d 647), People v McGrath (46 NY2d 12), and People ex rel. Piccarillo v New York State Bd. of Parole (48 NY2d 76), petitioner urges that unlawfully seized evidence must be excluded from police disciplinary proceedings.
This Court decided three cases in Matter of Finn’s Liq. Shop (supra). In the first case, Matter of Finn’s Liq. Shop, after unlawfully searching a coat in the back room of a bar, two investigators from the State Liquor Authority recovered sales slips indicating that liquor had been sold, impermissibly, on credit. The sales slips were admitted at a hearing before the State Liquor Authority and, relying on the evidence, the Authority suspended the petitioner’s liquor license for 10 days. This Court held that the search and seizure of the sales slips violated the Fourth Amendment and that the Authority’s determination, grounded on the evidence seized, must fall (see, id., at 658-659). In Matter of La Penta v State Liq. Auth., after using an illegal wiretap, the police procured evidence that the defendant had been involved in gambling. The evidence was admitted at a license revocation hearing held by the State Liquor Authority. CPLR 4506 expressly prohibited the use of evidence obtained through an illegal wiretap in any civil or criminal action, proceeding, or hearing. The Court concluded that evidence seized in violation of that statute is inadmissible for any purpose (see, id., at 659-661). In Matter of Malik v New *194 York State Liq. Auth., two City of Buffalo police officers unlawfully searched the petitioner’s premises and seized evidence that bookmaking activities had taken place on the premises. The evidence, which was suppressed in an ensuing criminal action, was admitted in a hearing to revoke the petitioner’s license held before the State Liquor Authority. In concluding that the evidence was inadmissible in the administrative hearing, the Court stated that although the City of Buffalo Police and the State Liquor Authority may be treated, for other purposes, as independent parties, "this can hardly be the case where they are both seeking to use the same police officials as their agents to gather evidence” (id., at 662).
While the Court in Matter of Finn’s (supra) applied the exclusionary rule to exclude evidence that had been unlawfully seized by municipal police officers, the Court did so because the police officers were acting as agents of the State Liquor Authority. The Court noted that the State Liquor Authority has the power to revoke, suspend or cancel licenses, as well as impose penal sanctions on licensees who violate the Alcoholic Beverage Control Law (24 NY2d, at 654, n 1) and that, in two of the three cases, the municipal police officers were acting as agents of the State Liquor Authority in seeking to enforce the Alcoholic Beverage Control Law (see, id., at 654-655). The Court reasoned that if the exclusionary rule had not been applied, "there would be no way to protect licensees from abuse and harassment at the hands of [Authority’s] employees or agents” (id., at 654). The Court stated further that "[t]here can be no justification for any State agency, charged with enforcement of the law, to rely, in fulfilling its function, upon the unlawful and unconstitutional acts of its agents” (id., at 662-663).
The present case is clearly distinguishable from Matter of Finn’s (supra). Here, nothing in the record indicates that the Buffalo City Police were acting as agents of the Division of State Police. Thus, it cannot be said that the Division of State Police, in seeking to discipline petitioner for unlawful possession of marihuana, relied upon the unlawful and unconstitutional acts of its agents.
People ex rel. Piccarillo (supra) does not apply to the circumstances in this case. There, the New York City Police Department sought to admit in a parole revocation hearing evidence seized unlawfully during an automobile search. The Court likened a parole revocation hearing to a criminal action *195 and held that "the exclusionary rule proscribes the use of illegally seized evidence at a parole revocation hearing” (id., at 83).
The deterrence analysis outlined in People v McGrath (supra), the third case relied upon by petitioner, reflects the Court’s recent approach to deciding whether the exclusionary rule should be applied in administrative proceedings. In recent cases, the Court has stated that "the application and scope of the exclusionary rule is ascertained by balancing the foreseeable deterrent effect against the adverse impact of suppression upon the truth-finding process” (People v Drain, 73 NY2d 107, 110), and has declined to suppress relevant evidence if little or no deterrent benefit could be anticipated from the exclusion (see, e.g., People v Arnau, 58 NY2d 27; People v Rogers, 52 NY2d 527).
In People v McGrath (supra), the Court considered whether in a criminal contempt proceeding the Fourth Amendment requires suppression of a defendant’s testimony before the Grand Jury as the fruit of an illegal wiretap. In the companion case, Matter of Mancini v Codd, the Court considered whether in a civil disciplinary proceeding in which a policeman is charged with perjury, the Fourth Amendment requires the suppression of his testimony before the Grand Jury, as well as the testimony of witnesses at the subsequent disciplinary hearing, as the fruit of an illegal wiretap. Balancing the probable deterrent effect of the exclusionary rule against the detrimental impact upon the truth-finding process, the Court held that "the insubstantial benefit to be gained at the expense of the truth-finding process by application of the exclusionary rule militates against suppression of [the Grand Jury] testimony” (id., at 32).
The Court also applied the deterrence analysis in People v Drain (supra). There, the defendant was arrested and charged with two counts of misdemeanor possession of a controlled substance after a State Trooper observed 13 packages containing $815,000 in cash, a checkbook, and small quantities of controlled substances in the trunk of his vehicle. The defendant was later subpoenaed to testify before a Grand Jury regarding the cash and certain checkbook entries. He was granted immunity but allegedly testified falsely before the Grand Jury. The misdemeanor charges against him were dropped after it was determined that the evidence had been unlawfully seized. He was indicted for perjury. The defendant *196 sought to suppress the checkbook and the cash. This Court concluded that suppression was not required since "[i]t is unreasonable * * * to believe that the police, in the future, will jeopardize a direct prosecution in hopes that an immunized defendant, aware that the authorities have discovered evidence to refute his statement, will perjure himself before the Grand Jury” (id., at 112).
Applying the deterrence analysis here, we conclude that the evidence seized by the Buffalo City police officers should have been admitted in the State Police’s administrative proceeding. The Buffalo City Police could not have foreseen, when they searched the vehicle, that defendant would be subject to an administrative disciplinary proceeding by the Division of State Police. They did not know, prior to the search, that defendant was a State Trooper. Nor were the Buffalo City police officers acting as agents of the Division of State Police. Thus, only negligible deterrence would result from the exclusion of the evidence. On the other hand, the suppression of the evidence would have a significant adverse impact upon the truth-finding process in administrative proceedings concerning police officers involved in drug-related incidents. Stated differently, the benefit to be gained from precluding police officers, who unlawfully possess controlled substances, from making arrests — including arrests for drug-related offenses — clearly outweighs any deterrent effect that may arise from applying the exclusionary rule to preclude evidence unlawfully obtained by Buffalo City police officers and sought to be admitted by the Division of State Police in an administrative disciplinary proceeding.
Respondent correctly asserts that the determination that petitioner knowingly possessed marihuana is supported by substantial evidence. Substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact” (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180). "The presence of a controlled substance in an automobile * * * is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found” (Penal Law § 220.25 [1]).
Finally, the penalty of dismissal is not so disproportionate to the offense, in light of all the circumstances, as to be shocking to one’s sense of fairness (see, Matter of Pell v Board of Educ., 34 NY2d 222).
*197 Accordingly, the judgment of the Appellate Division should be reversed, with costs, respondent’s determination reinstated, and the petition dismissed.