■ In the Matter of MICHAEL A. CUNNINGHAM, Petitioner, v NEW YORK STATE DEPARTMENT OF LABOR, Respondent. [933 NYS2d 432]—

Lahtinen, J.

Petitioner, a state employee since 1980, was respondent's

Director of Staff and Organizational Development for nearly 20 years. In the last 10 years, he had been disciplined on several occasions for various workplace misconduct. In 2008, respondent suspected that petitioner was engaging in a pattern of taking unauthorized absences from work as well as falsifying time records. Respondent had an investigator attempt to tail petitioner when he left his office during work hours in April 2008, but the effort was thwarted when petitioner realized he was being followed. Thereafter, respondent referred the matter to the Office of the Inspector General (hereinafter OIG).

During June and July 2008, OIG conducted an investigation that included, among other things, obtaining via subpoena petitioner's E-Z Pass records and placing a global positioning system (hereinafter GPS) device on petitioner's vehicle on June 3, 2008 when it was parked in a parking lot near his work place. The GPS device was removed and it was replaced with another GPS device on June 11, 2008. This procedure was repeated again on June 20, 2008, and that last GPS—which stopped recording information on July 3, 2008—was removed on July 8, 2008. OIG used data extracted from the GPS devices for a 30-day period (June 3 to July 3, 2008)[1] as part of the evidence for its report concluding that petitioner had engaged in a pattern of submitting fraudulent time records. During the relevant time periods, petitioner allegedly had reported false information about hours worked on many days and submitted false vouchers related to travel with his vehicle.

Respondent served petitioner with a notice of discipline pursuant to Civil Service Law § 75 alleging 13 specifications of misconduct including, among other things, falsifying time records and travel vouchers for himself and his secretary. Petitioner moved to suppress the evidence obtained using GPS devices and the Hearing Officer denied the motion. Following a hearing, the Hearing Officer found ample proof to sustain 11 of the 13 charges and recommended a penalty of termination of employment. The Commissioner of Labor adopted the findings and recommendation. This CPLR article 78 proceeding ensued.

Initially, we consider respondent's contention that it is not necessary to address the merits of the admissibility at the administrative hearing of the GPS evidence because there was adequate other proof on all of the sustained charges. "Compliance with the technical rules of evidence is not required in a hearing pursuant to Civil Service Law § 75 and, unless the

---

**1.** The devices ostensibly were not sending information to OIG and were not constantly monitored, but instead they recorded and stored information that could be downloaded from a device once it was retrieved.

admission of evidence will violate the fundamentals of a fair hearing, even the erroneous reception of evidence is an insufficient basis for annulment of a determination that is on the entire record, supported by substantial evidence" (*Matter of Gardner v Niskayuna Cent. School Dist.*, 42 AD3d 633, 636 [2007], *lv denied* 9 NY3d 813 [2007] [internal quotation marks and citations omitted]; *see Matter of Moro v Mills*, 70 AD3d 1269, 1270-1271 [2010]). Petitioner acknowledges that GPS evidence was not considered in sustaining charge 4 (false time record for July 10 to July 23, 2008), charge 5 (insubordinate for not working hours directed) and charge 12 (insubordinate for contacting coworker after suspension and not being truthful to director of personnel). Further, review of the record as well as the Hearing Officer's recitation of relevant proof for charges 8, 9 and 10 (falsified travel vouchers and time record regarding June 25, 2008 travel from Syracuse to Albany) and charge 11 (untruthful statement to investigator) reveals ample independent support for these charges, including the E-Z Pass records. Although there was some non-GPS proof as to the remaining sustained charges (1, 2, 3 and 6), it is apparent that the GPS evidence was significant as to each of these charges. Hence, the use of GPS proof as to these four charges would be unduly prejudicial if, as petitioner contends, its admission was improper (*cf. Matter of Wojewodzic v O'Neill*, 295 AD2d 670, 672 [2002]).

Petitioner argues that the GPS devices placed on his car without a warrant[2] constituted an illegal search and seizure under the NY Constitution and that all data related thereto should have been excluded from evidence at the administrative hearing. In a case decided after OIG had concluded its investigation of petitioner, the majority in the Court of Appeals held that, within the context of a criminal investigation, "[u]nder our State Constitution, in the absence of exigent circumstances, the installation and use of a GPS device to monitor an individual's whereabouts requires a warrant supported by probable cause" (*People v Weaver*, 12 NY3d 433, 447 [2009]). Although the GPS evidence gathered in this proceeding would have likely been excluded from a criminal trial under *Weaver*, the standard for using or excluding evidence at administrative proceedings is not controlled by criminal law (*see Matter of Boyd v Constantine*, 81 NY2d 189, 195 [1993]; *Matter of Stedronsky v Sobol*, 175 AD2d 373, 375 [1991], *lv denied* 78 NY2d 864 [1991]; *Matter of*

---

**2.** An administrative agency does not have the power to apply for an ex parte warrant absent a clear statutory grant of such authority (*see Matter of Shankman v Axelrod*, 73 NY2d 203, 206 [1989]). OIG's powers are set forth in Executive Law § 54.

*Gibson v Koehler*, 165 AD2d 768, 769 [1990]; *see also I.N.S. v Lopez-Mendoza*, 468 US 1032, 1041-1042 [1984]; 1 McCormick on Evidence § 173, Supp to Notes [6th ed] [observing that most courts do not apply the exclusionary rule to various administrative proceedings including employee disciplinary matters]).

A search conducted by a public employer investigating work-related misconduct of one of its employees is judged by the standard of reasonableness under all the circumstances, both as to the inception and scope of the intrusion (*see Matter of Caruso v Ward*, 72 NY2d 432, 437 [1988]; *see also O'Connor v Ortega*, 480 US 709, 725-726 [1987]). Closely related, but typically applied when the search was conducted by an entity other than the administrative body seeking to use the evidence in a disciplinary proceeding, is the exclusionary rule in the noncriminal context; such rule is applied by "balancing the deterrent effect of exclusion against its detrimental impact on the process of determining the truth" (*Matter of Moro v Mills*, 70 AD3d 1269, 1270 [2010]; *see Matter of Boyd v Constantine*, 81 NY2d at 195). In noncriminal proceedings, the clarity of the law at the time the governmental official acts can be pertinent to the reasonableness of the action and the deterrent effect (*see Burka v New York City Tr. Auth.*, 747 F Supp 214, 220 [SD NY 1990]; *see also I.N.S. v Lopez-Mendoza*, 468 US at 1060 [White, J., dissenting] [urging that exclusionary rule be applied in deportation proceedings "when evidence has been obtained by *deliberate violations* of the Fourth Amendment or by conduct a *reasonably competent officer would know* is contrary to the Constitution" (emphasis added)]).

Here, respondent did not conduct the investigation in which the GPS was used, but it did refer the matter to OIG for the purpose of an investigation. Under such facts, the reasonableness test appears applicable.[3] It is undisputed that respondent had reasonable grounds at the inception of the use of the GPS to support individual misconduct by petitioner. At the time of the current investigation by OIG, an earlier disciplinary action involving petitioner was pending regarding false time records, and respondent's investigation had revealed reasonable suspicion of a continuation of such conduct. Respondent clearly had a responsibility to curtail the suspected ongoing abuse of work time not only to preserve its integrity, but also to protect taxpayers' monies.

---

3. In any event, both the reasonableness and exclusionary tests are satisfied by respondent in this case and, moreover, we note that some aspects of the broad analysis of reasonableness under all of the circumstances can implicate consideration of factors weighed in the exclusionary test.

With regard to the scope of use of GPS devices, the most serious charges against petitioner involved an ongoing pattern of abuse of work time, and traditional methods—such as tailing petitioner—had been tried and had been thwarted. Petitioner used his personal vehicle during working hours for some of the suspected abuse of his state job. He could hardly have been surprised to be under investigation in light of his recent past, as well as his ongoing problems at work. The GPS devices were not constantly monitored and, in fact, there is no indication that such a capability existed for the devices that were used.[4] They were retrieved and information relevant to petitioner's location during work hours was extracted. To establish a pattern of serious misconduct (i.e., repeatedly submitting false time records and not a mere isolated incident), it was necessary to obtain pertinent and credible information over a period of time. Obtaining such information for one month was not unreasonable in the context of a noncriminal proceeding involving a high-level state employee with a history of discipline problems who had recently thwarted efforts to follow him in his nonwork-related ventures during work hours. Given the facts and circumstances at the time of the investigation, we are unpersuaded that OIG or respondent acted unreasonably.[5]

Rose and Egan Jr., JJ., concur.

Spain, J.P. (dissenting). Respectfully, we dissent. In our view, the global positioning system (hereinafter GPS) evidence submitted against petitioner was obtained by an unconstitutional search and, therefore, the charges sustained by virtue of that evidence must be reversed. However, as the majority recognizes, charges 4, 5, 8, 9, 10, 11 and 12 are supported by inde-

4. We note that at the inception of the use of a GPS on petitioner's car on June 3, 2008, the weight of authority pointed in the direction that use of a GPS was not a Fourth Amendment violation even in the criminal law context (see e.g. People v Weaver, 12 NY3d 433, 452 [2009, Read, J., dissenting]), and two days after the device was first placed, the majority of this Court held—in a criminal case (where more rigid standards pertain) involving a broader use of a GPS device than here—that neither the US Constitution nor the NY Constitution had been violated (People v Weaver, 52 AD3d 138 [2008], revd 12 NY2d 433 [2009]). Our holding, although later reversed by the Court of Appeals under the NY Constitution, was, at the time, the only appellate court authority in this state on this type of use of a GPS device in a criminal case (id. at 141). The United States Supreme Court recently granted certiorari in a case involving the use of a GPS device in a criminal case (United States v Jones, 564 US —, 131 S Ct 3064 [2011]).

5. We also note that, under these circumstances, there is not a meaningful deterrent effect in excluding the GPS evidence used by respondent. In fact, on cross-examination by petitioner's counsel, an investigator from OIG indicated that currently (i.e., after the Court of Appeals' decision in Weaver) different standards exist within OIG for GPS use.

pendent evidence, thus we would remit for the imposition of a penalty based solely on those sustainable charges.

Here, the search conducted on behalf of respondent had to be reasonable not only at inception—conceded here—but also in scope (*see Matter of Delaraba v Nassau County Police Dept.*, 83 NY2d 367, 374 [1994]). A search by a public employer "is permissible in scope when the means adopted are reasonably related to the objectives of the search and are not excessively intrusive given the nature of the misconduct" (*Morris v Port Auth. of N.Y. & N.J.*, 290 AD2d 22, 28 [2002]). We wholly agree—given petitioner's past misconduct and the difficulty in obtaining evidence by traditional methods—that the use of a GPS device was warranted at inception. In our view, however, the scope of its use was so broad and intrusive as to defy a finding of reasonableness. Respondent's valid interest in petitioner's whereabouts extended only to the hours of his workday, yet the device placed on petitioner's personal vehicle collected data 24 hours a day, seven days a week. Petitioner's movements were tracked for over a month, including during a week-long family vacation. Further, because we feel that deterring this type of intrusive conduct outweighs the detrimental impact on the process of determining the truth—especially given that non-GPS evidence was amassed against petitioner sufficient to sustain other, multiple charges—the evidence should have been suppressed at his hearing (*see Matter of Boyd v Constantine*, 81 NY2d 189, 195 [1993]).

Finally, to the extent that the majority suggests that this Court's interpretation of constitutional law at the time the search here was conducted supports or justifies the intrusive nature of this investigation, we cannot agree. In determining that the unfettered use of GPS devices "to pry into the details of people's daily lives is not consistent with the values at the core of our State Constitution's prohibition against unreasonable searches" (*People v Weaver*, 12 NY3d 433, 446 [2009]), the Court of Appeals did not create a new law, but articulated the constitutional protection to which petitioner was entitled.

Garry, J., concurs. Adjudged that the determination is confirmed, without costs, and petition dismissed.