[997 NE2d 468, 974 NYS2d 896]

In the Matter of MICHAEL A. CUNNINGHAM, Appellant, v NEW YORK STATE DEPARTMENT OF LABOR, Respondent.

Argued May 29, 2013; decided June 27, 2013

**POINTS OF COUNSEL**

*New York Civil Liberties Union Foundation,* New York City (*Corey L. Stoughton, Arthur Eisenberg* and *Christopher Dunn* of counsel), for appellant. I. The government's global positioning system surveillance of the Cunningham family car was unconstitutional because it failed to comply with the warrant requirement. (*People v Weaver,* 12 NY3d 433; *Matter of Caruso v Ward,* 72 NY2d 432; *O'Connor v Ortega,* 480 US 709; *Delia v City of Rialto,* 621 F3d 1069; *National Assn. of Letter Carriers, AFL-CIO v United States Postal Serv.,* 604 F Supp 2d 665; *Matter of Delaraba v Nassau County Police Dept.,* 83 NY2d 367; *Matter of Seelig v Koehler,* 76 NY2d 87; *Matter of Patchogue-Medford*

*Congress of Teachers v Board of Educ. of Patchogue-Medford Union Free School Dist.*, 70 NY2d 57.) II. The government's global positioning system surveillance of the Cunningham family car was unconstitutional even under the workplace-search exception to the warrant requirement. (*Matter of Caruso v Ward*, 72 NY2d 432; *O'Connor v Ortega*, 480 US 709; *New Jersey v T. L. O.*, 469 US 325; *Matter of Delaraba v Nassau County Police Dept.*, 83 NY2d 367; *People v Weaver*, 12 NY3d 433.) III. The exclusionary rule applies to administrative proceedings and should have barred consideration of the global positioning system evidence. (*Matter of Boyd v Constantine*, 81 NY2d 189; *Matter of Finn's Liq. Shop v State Liq. Auth.*, 24 NY2d 647, 396 US 840; *Matter of Charles Q. v Constantine*, 85 NY2d 571; *Matter of Gaglia v Starr*, 59 AD2d 839; *Matter of McPherson v New York City Hous. Auth.*, 47 AD2d 828; *Battaglia v New York City Tr. Auth.*, 225 AD2d 384; *Matter of Crockett v Bratton*, 199 AD2d 1079; *Matter of Moore v Constantine*, 191 AD2d 769; *Matter of Barretto v City of New York*, 157 AD2d 116; *Worrel v Brown*, 177 AD2d 446.)

*Eric T. Schneiderman, Attorney General*, Albany (*Kate H. Nepveu, Barbara D. Underwood* and *Andrea Oser* of counsel), for respondent. I. Petitioner waived his claim that the global positioning system search was invalid in the absence of a warrant. (*Matter of Delaraba v Nassau County Police Dept.*, 83 NY2d 367; *Matter of Caruso v Ward*, 72 NY2d 432; *O'Connor v Ortega*, 480 US 709; *Bingham v New York City Tr. Auth.*, 99 NY2d 355.) II. The global positioning system search did not require a warrant; it was properly analyzed under the standard of reasonableness applicable to investigations of work-related misconduct. (*Matter of Delaraba v Nassau County Police Dept.*, 83 NY2d 367; *Matter of Caruso v Ward*, 72 NY2d 432; *O'Connor v Ortega*, 480 US 709; *Delia v City of Rialto*, 621 F3d 1069; *Payton v New York*, 445 US 573; *National Assn. of Letter Carriers, AFL-CIO v United States Postal Serv.*, 604 F Supp 2d 665; *People v Weaver*, 12 NY3d 433; *Matter of Abe A.*, 56 NY2d 288; *Matter of Patchogue-Medford Congress of Teachers v Board of Educ. of Patchogue-Medford Union Free School Dist.*, 70 NY2d 57; *Matter of Seelig v Koehler*, 76 NY2d 87.) III. The global positioning system data was obtained in a search that was reasonable at inception and in scope. (*Matter of Moro v Mills*, 70 AD3d 1269; *Matter of Boyd v Constantine*, 81 NY2d 189; *O'Connor v Ortega*, 480 US 709; *People v Weaver*, 52 AD3d 138, 12 NY3d 433; *New Jersey v T. L. O.*, 469 US 325.) IV. Alternatively, the Court should sustain so much of the Appellate Division's decision as found

that the global positioning system evidence was harmless as to seven of the underlying charges. (*Matter of Wojewodzic v O'Neill*, 295 AD2d 670.)

*Richard E. Casagrande*, New York City (*Wendy M. Star* and *Keith J. Gross* of counsel), for New York State United Teachers, amicus curiae. I. The government's surreptitious placement of a global positioning system device on appellant's private car without obtaining a warrant was unconstitutional. (*People v Weaver*, 12 NY3d 433; *Skinner v Railway Labor Executives' Assn.*, 489 US 602.) II. The warrant exception for workplace searches does not permit the government's warrantless search of appellant's car via global positioning system tracking. (*O'Connor v Ortega*, 480 US 709; *Matter of Caruso v Ward*, 72 NY2d 432.) III. The Office of the State Inspector General's function as an investigatory agency further supports that a warrant is required to conduct a search via a global positioning system. IV. The exclusionary rule should be applied to exclude the illegally obtained global positioning system information. (*Matter of Finn's Liq. Shop v State Liq. Auth.*, 24 NY2d 647, 396 US 840; *Matter of Allen v Murphy*, 37 AD2d 117; *O'Connor v Ortega*, 480 US 709; *Matter of Caruso v Ward*, 72 NY2d 432; *People v Weaver*, 12 NY3d 433.)

### OPINION OF THE COURT

SMITH, J.

The State of New York, suspecting that one of its employees was submitting false time reports, attached a global positioning system (GPS) device to the employee's car. Under *People v Weaver* (12 NY3d 433 [2009]) and *United States v Jones* (565 US —, 132 S Ct 945 [2012]), the State's action was a search within the meaning of the State and Federal Constitutions. We hold that the search did not require a warrant, but that on the facts of this case it was unreasonable.

## I

Petitioner became a state employee in 1980, and in 1989 was appointed as Director of Staff and Organizational Development of the State Department of Labor. In 2008, the Department began an investigation relating to petitioner's alleged unauthorized absences from duty and the falsification of records to conceal those absences. That investigation led to a disciplinary proceeding that resulted in a two-month suspension; it also led to a second investigation, because, after petitioner eluded an

investigator who was following his car, the Department referred petitioner's conduct to the Office of the State Inspector General. The Inspector General's investigation resulted in a second disciplinary proceeding, the one now before us.

As far as the record shows, the first step in the Inspector General's investigation was to attach a GPS device to petitioner's car, without petitioner's knowledge, while the car was parked in a lot near the Department of Labor offices. This device and two later replacements recorded all of the car's movements for a month, including evenings, weekends and several days when petitioner was on vacation in Massachusetts. Later, the Inspector General pursued other avenues of investigation: surveillance of an apartment building petitioner was suspected of visiting during working hours, subpoenas for E-ZPass records and interviews of petitioner and his secretary.

After receiving the Inspector General's report, the Department brought new charges against petitioner, of which 11 were sustained by a Hearing Officer. Four of those 11 charges were dependent on evidence obtained from the GPS device. As to three charges, the GPS information showed that petitioner's times of arrival at and departure from his office were inconsistent with the number of hours he claimed, on time records he submitted, to have worked. A fourth charge was based on petitioner's approval of time records showing his secretary was working during hours when the GPS information showed that he was visiting her home. Four other charges were supported by GPS evidence and other evidence as well; they related to the time when petitioner claimed that he and his secretary returned home from a business trip to Syracuse. Both GPS information and E-ZPass records showed they had returned in the middle of the workday, not at the end of it as documents submitted or approved by petitioner had said. The GPS information was irrelevant to the remaining three sustained charges.

The Commissioner of Labor affirmed the Hearing Officer's determination, and terminated petitioner's employment. Petitioner brought this CPLR article 78 proceeding to challenge that ruling. On transfer from Supreme Court, the Appellate Division, with two Justices dissenting, confirmed the Commissioner's determination and dismissed the petition (*Matter of Cunningham v New York State Dept. of Labor*, 89 AD3d 1347 [3d Dept 2011]). Petitioner appeals as of right, pursuant to CPLR 5601 (a) and (b) (1), and we now reverse the Appellate Division's judgment.

## II

■ We decided in *Weaver*, and the Supreme Court decided in *Jones*, that the attachment by law enforcement officers of a GPS device to the automobile of a criminal suspect, and the use of that device to track the suspect's movements, was a search subject to constitutional limitations. *Weaver* and *Jones* establish that what happened in this case was a search also, within the meaning of article I, § 12 of the New York Constitution and the Fourth Amendment; the State does not contend otherwise. But neither *Weaver* nor *Jones* presented the question of when, if ever, a GPS search is permissible in the absence of a search warrant (*see Weaver*, 12 NY3d at 444-445 [the search "comes within no exception to the warrant requirement, and the People do not contend otherwise"]; *Jones*, 565 US at —, 132 S Ct at 954 [holding the argument that the search without a warrant was "reasonable—and thus lawful" to be forfeited]). Here, the State argues, and we agree, that this search is within the "workplace" exception to the warrant requirement recognized in *O'Connor v Ortega* (480 US 709 [1987]) and *Matter of Caruso v Ward* (72 NY2d 432 [1988]).

*O'Connor* involved the warrantless search by a public employer of the office of an employee suspected of misconduct. The Supreme Court upheld the search. The plurality opinion explained:

> "In our view, requiring an employer to obtain a warrant whenever the employer wished to enter an employee's office, desk, or file cabinets for a work-related purpose would seriously disrupt the routine conduct of business and would be unduly burdensome. Imposing unwieldy warrant procedures in such cases upon supervisors, who would otherwise have no reason to be familiar with such procedures, is simply unreasonable" (480 US at 722; *see also id.* at 732 [Scalia, J., concurring] [warrantless searches "to investigate violations of workplace rules" do not violate the Fourth Amendment]).

In *Caruso*, we made clear that we would follow *O'Connor* in deciding the constitutionality of searches conducted by public employers, whether for "noninvestigatory, work-related purposes" or for "investigations of work-related misconduct," under the New York as well as the Federal Constitution (72 NY2d at 437 [internal quotation marks omitted]). *Caruso*

applied *O'Connor* to uphold random urinalysis testing of certain police officers. (*See also Matter of Seelig v Koehler*, 76 NY2d 87 [1990] [upholding urinalysis testing of uniformed correction officers]; *Matter of Delaraba v Nassau County Police Dept.*, 83 NY2d 367 [1994] [upholding urinalysis testing of police officers].)

Petitioner here does not challenge the existence of a workplace exception to the warrant requirement, but argues that it is inapplicable because the object of the search in this case was petitioner's personal car. Petitioner asks us to confine the exception to "the workplace itself, or . . . workplace-issued property that can be seen as an extension of the workplace" (brief of petitioner-appellant at 13). We reject the suggestion, at least insofar as it would require a public employer to get a warrant for a search designed to find out the location of the automobile an employee is using when that employee is, or claims to be, working for the employer.

The *O'Connor* plurality observed that such items as a personal photograph on an employee's desk, or a personal letter posted on an employee bulletin board, are part of the workplace (480 US at 716). The location of a personal car used by the employee during working hours does not seem to us more private. Petitioner was required to report his arrival and departure times to his employer; this surely diminished any expectation he might have had that the location of his car during the hours he claimed to be at work was no one's concern but his. We are unpersuaded by the suggestion in the concurring opinion that, on our reasoning, a GPS device could, without a warrant, be attached to an employee's shoe or purse (concurring op at 527). People have a greater expectation of privacy in the location of their bodies, and the clothing and accessories that accompany their bodies, than in the location of their cars.

The reasons that led the *O'Connor* Court to dispense with the warrant requirement—the serious disruption that such a requirement would entail, and the burden it would impose on supervisors who "are hardly in the business of investigating the violation of criminal laws" (480 US at 722 [plurality op]; *see also id.* at 732 [Scalia, J., concurring])—apply no less to an investigation of the kind at issue here than to the investigations in *O'Connor* and in *Ontario v Quon* (560 US 746 [2010]), which involved a scrutiny of text messages on an employer-issued pager. We thus conclude that when an employee chooses to use his car during the business day, GPS tracking of the car may be considered a workplace search.

The Inspector General did not violate the State or Federal Constitution by failing to seek a warrant before attaching a GPS device to petitioner's car.

## III

■ While the search did not require a warrant, it did not comply with either the State or Federal Constitution unless it was a reasonable search. We conclude that the State has failed to demonstrate that this search was reasonable.

The *O'Connor* plurality, quoting from *Terry v Ohio* (392 US 1, 20 [1968]) and *New Jersey v T. L. O.* (469 US 325, 341-342 [1985]), summarized the approach of courts to the question of reasonableness in this way:

> "Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place . . . .

> "The search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the nature of the misconduct" (480 US at 726 [citations, internal quotation marks, ellipses and brackets omitted]).

Under *O'Connor*, a workplace search based on a reasonable suspicion of employee misconduct is "justified at its inception" (480 US at 726 [plurality op]; *id.* at 732 [Scalia, J., concurring]). The search in this case clearly meets that test. Petitioner's employer had ample grounds to suspect him of submitting false time records.

We cannot find, however, that this search was reasonable in its scope. It was, in the words of the *T. L. O.* Court quoted in *O'Connor*, "excessively intrusive." It examined much activity with which the State had no legitimate concern—i.e., it tracked petitioner on all evenings, on all weekends and on vacation. Perhaps it would be impossible, or unreasonably difficult, so to limit a GPS search of an employee's car as to eliminate all surveillance of private activity—especially when the employee chooses to go home in the middle of the day, and to conceal this from his employer. But surely it would have been possible to

stop short of seven-day, 24-hour surveillance for a full month. The State managed to remove a GPS device from petitioner's car three times when it suited the State's convenience to do so—twice to replace it with a new device, and a third time after the surveillance ended. Why could it not also have removed the device when, for example, petitioner was about to start his annual vacation?

It is true that none of the evidence used against petitioner in this case resulted from surveillance outside of business hours. Ordinarily, when a search has exceeded its permissible scope, the suppression of items found during the permissible portion of the search is not required (*see United States v Martell*, 654 F2d 1356, 1361 [9th Cir 1981] [excessive length of detention did not taint search where nothing new was learned "during the unlawful portion" of the detention]; *United States v Clark*, 891 F2d 501, 505 [4th Cir 1989] [same]). But we hold that rule to be inapplicable to GPS searches like the present one, in light of the extraordinary capacity of a GPS device to permit "[c]onstant, relentless tracking of anything" (*Weaver*, 12 NY3d at 441). Where an employer conducts a GPS search without making a reasonable effort to avoid tracking an employee outside of business hours, the search as a whole must be considered unreasonable. That conclusion concededly requires suppression of the GPS evidence here; the State has disclaimed any reliance on the balancing test that we use when deciding whether to invoke the suppression remedy in administrative proceedings (*see Matter of Boyd v Constantine*, 81 NY2d 189 [1993]).

The consequence of suppression in this case is not to preclude the State from disciplining petitioner. As the majority and the dissenting Justices in the Appellate Division agreed, only four of the 11 counts on which petitioner was found guilty depended on GPS evidence, and only those four charges need be dismissed. As to the others, the GPS evidence was either substantially duplicated by E-ZPass records or was wholly irrelevant. Whether the seven surviving charges warrant the same or a lesser penalty is a matter to be decided, in the first instance, by the Commissioner of Labor on remand.

Accordingly, the judgment of the Appellate Division should be reversed, with costs, charges one, two, three and six against petitioner dismissed, and the matter remitted to the Appellate Division with directions to remand to the Commissioner of Labor for redetermination of the penalty.

ABDUS-SALAAM, J. (concurring). The majority's application of the workplace exception to the warrant requirement may be a well-intentioned effort to smooth the way for government employers to investigate time theft and other workplace misconduct. However, the majority's decision has expanded this exception well beyond its intended scope, and has run afoul of the protections afforded by New York Constitution, article I, § 12 and the Fourth Amendment by infringing on a government employee's "reasonable expectation of privacy" (*Katz v United States*, 389 US 347, 360 [1967, Harlan, J., concurring]).

I would hold that the State cannot, without a warrant, place a GPS on a personal, private car to investigate workplace misconduct. Accordingly, the warrantless search in this case was unconstitutional under both the Federal and State Constitutions, and the evidence obtained by the warrantless search must be excluded from the disciplinary hearing.

We held in *People v Weaver* (12 NY3d 433 [2009]), and the Supreme Court held in *United States v Jones* (565 US —, 132 S Ct 945 [2012]), that the use of a GPS device by government law enforcers to track the movements of a vehicle is a search subject to constitutional protections. In *Weaver*, we explained that GPS tracking is more intrusive than simply following a car, and that GPS surveillance is not analogous to visual surveillance for the purposes of constitutional analysis (*see Weaver*, 12 NY3d at 441).

> "GPS is not a mere enhancement of human sensory capacity, it facilitates a new technological perception of the world in which the situation of any object may be followed and exhaustively recorded over, in most cases, a practically unlimited period. The potential for a similar capture of information or 'seeing' by law enforcement would require, at a minimum, millions of additional police officers and cameras on every street lamp" (*id.* at 441).

It took "little imagination" for us to conjure the types of "indisputably private" information that would be "[d]isclosed in the data" from a GPS device planted on a person's vehicle:

> "[T]rips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on. What the technology yields and records with breathtaking

quality and quantity is a highly detailed profile, not simply of where we go, but by easy inference, of our associations—political, religious, amicable and amorous, to name only a few—and of the pattern of our professional and avocational pursuits" (*id.* at 441-442; *see Jones*, 565 US at —, 132 S Ct at 955 [Sotomayor, J., concurring] [citing *Weaver* for the proposition that "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about (his or) her familial, political, professional, religious, and sexual associations"]).

Recognizing that, "[w]ithout judicial oversight, the use of [GPS] devices presents a significant and, to our minds, unacceptable risk of abuse" (*Weaver*, 12 NY3d at 447), we held that "[u]nder our State Constitution . . . the installation and use of a GPS device to monitor an individual's whereabouts requires a warrant supported by probable cause" (*id.*).

The privacy and constitutional concerns recognized in *Weaver* and *Jones* apply equally in this case. GPS is a "sophisticated and powerful technology that is easily and cheaply deployed and has virtually unlimited and remarkably precise tracking capability" (*Weaver*, 12 NY3d at 441). Surely, a government employer's interest in determining whether its employees are falsifying time records is just as important as the State's interest in protecting the public from dangerous criminals. Yet, the majority, ignoring our concerns in *Weaver*, would permit government employers who suspect employees of misconduct to use GPS devices, without first obtaining a warrant, to track and monitor those employees' precise whereabouts during business hours. As we noted in *Weaver*, it is not difficult to imagine the inherently personal and private information such surveillance will yield, even if limited to working hours. While government employers need to know whether their employees actually worked during the hours for which they were paid, public employees are entitled to at least some expectation of privacy concerning their movements throughout the workday. A search as intrusive as GPS surveillance, which, as this case demonstrates, is highly susceptible to abuse without judicial oversight, requires a warrant.

Investigating workplace misconduct is indisputably an important responsibility of a government employer. As the Supreme Court stated in *O'Connor v Ortega* (480 US 709 [1987]):

> "Public employers have an interest in ensuring that their agencies operate in an effective and efficient manner, and the work of these agencies inevitably suffers from the inefficiency, incompetence, mismanagement, or other work-related misfeasance of its employees" (480 US at 724).

*O'Connor* involved the warrantless search of a government employee's office and seizure of personal items from his desk and file cabinet (*see id.* at 713). The Supreme Court applied "the standard of reasonableness under all the circumstances" (*id.* at 725-726) rather than a probable cause standard, and upheld the search. Importantly, in analyzing the Fourth Amendment restraints upon a workplace search, the Court stated that it was "essential first to delineate the *boundaries* of the workplace context" (*id.* at 715 [emphasis added]).

> "The workplace includes those areas and items that are related to work and are generally within the employer's control. At a hospital, for example, the hallways, cafeteria, offices, desks, and file cabinets, among other areas, are all part of the workplace. These areas remain part of the workplace context even if the employee has placed personal items in them, such as a photograph placed in a desk or a letter posted on an employee bulletin board" (*id.* at 715-716).

Other courts interpreting *O'Connor* have limited application of the workplace exception to the workplace itself. The Ninth Circuit held that the "workplace warrant exception" did not apply where, although the search arose in the context of a workplace investigation, it was carried out in the home (*Delia v City of Rialto*, 621 F3d 1069, 1076 n 4 [9th Cir 2010], *revd on other grounds sub nom. Filarsky v Delia*, 566 US —, 132 S Ct 1657 [2012]). In a case involving the United States Postal Service's attempt to gain access to its employee's medical records in connection with an investigation into potential criminal misconduct and liability for health benefits and workers' compensation, the District Court of the Southern District of New York rejected the Postal Service's argument that, based on *O'Connor*, a reasonableness standard applied and a search warrant was not required. The court held:

> "*O'Connor* applied solely to searches of the workplace. The Supreme Court defined the workplace as

'those areas and items that are related to work and are generally within the employer's control.' *Although the term 'work-related' was used by the O'Connor Court, neither O'Connor nor the cases considered by the Court in reaching its holding involved any area physically outside of the workplace*" (*National Assn. of Letter Carriers, AFL-CIO v United States Postal Serv.*, 604 F Supp 2d 665, 675-676 [SD NY 2009] [emphasis added and citation omitted]).

The majority's decision extends "the boundaries of the workplace" (*O'Connor*, 480 US at 715) far beyond the parameters delineated by the *O'Connor* Court. This case involves the search of an employee's personal car, not his office, desk, file cabinets (*see id.* at 715-716), or any other area physically inside the workplace. I reject the notion that government employees who use their cars for travel to and from work and work-related obligations place those cars within the ambit of their "employer[s'] control" such that they could be subjected to a warrantless search (*id.* at 715). A personal car is also not akin to a letter posted on a bulletin board, a photograph displayed on a desk, or other personal items an employee may bring within the "areas" traditionally understood as "part of the workplace context" (*id.* at 716).

The potential dangers of the majority's decision are evident when one considers a government employee, suspected of falsifying time records, who does not drive a car during the workday, but instead leaves the office on foot or takes public transit. There is now little to prevent a government employer from placing a GPS device on that person's bag, briefcase, shoe, cell phone, watch, or purse—anything that is used during the workday (like petitioner's car)—to determine whether, based on the tracking data transmitted by that device, the employee is located where he or she purports to be. The majority's statement that people have a greater expectation of privacy in the location of their bodies than in the location of their cars (*see* majority op at 521) avoids addressing the point that petitioner's employer was using electronic surveillance to track *petitioner's* location; tracking his personal car was only a means to that end. The location of petitioner's car was relevant only insofar as it indicated petitioner's whereabouts. It all comes down to electronically tracking the movements of the employee, which could be accomplished by tracking the employee's personal car (as in this

case) or any other personal property that the employee "chooses to use . . . during the business day" (majority op at 521).

I also disagree with the majority's suggestion that the concerns that "led the *O'Connor* Court to dispense with the warrant requirement" are present here (*see* majority op at 521). There would be no serious disruption to the "routine conduct of business" by requiring a government employer to obtain a warrant to search an employee's personal car (*O'Connor*, 480 US at 722). And mandating that government employers navigate "unwieldy warrant procedures" hardly seems "unreasonable" (*id.*) given the bevy of personal information they will likely uncover from a GPS search tracking an employee's personal car. Ultimately, the alleged burden imposed upon government employers by requiring a warrant for the search of a personal car should have little bearing on the question of whether they are constitutionally required to obtain one before conducting the search.

Critical here is that the warrantless search was of petitioner's *personal* car, and not employer-issued property (*see Ontario v Quon*, 560 US 746, —, 130 S Ct 2619, 2624 [2010] [applying the *O'Connor* workplace exception to the warrantless search of text messages sent and received on a pager "the employer owned and issued to an employee"]; *Leventhal v Knapek*, 266 F3d 64, 75-76 [2d Cir 2001] [applying workplace exception to search of office computer]; *Matter of Moore v Constantine*, 191 AD2d 769, 771 [3d Dept 1993] [upholding warrantless search of a police locker]). Ownership allows the government employer some level of control over its property, and may diminish the expectation of privacy employees enjoy in that property (*see Quon*, 560 US at —, 130 S Ct at 2629). Indeed, this may have been a different case if the vehicle searched was owned by and had been issued to petitioner by the State (*see Demaine v Samuels*, 29 Fed Appx 671, 675 [2d Cir 2002] [workplace exception applied to search of employer-issued car]). But that is not what occurred here: instead, the State searched petitioner's personal car that he and his family used on a daily basis. No New York court has ever permitted government employers to search employees' personal cars without a warrant, and the majority creates a dangerous precedent by allowing them to do so now.

The ramifications of the majority's decision will extend far beyond this case. All government employees, at all levels, in all three branches of government, may now be subject to electronic surveillance based upon a mere "reasonableness" standard,

without any judicial oversight at the inception of the search. Given the majority's imprimatur of warrantless GPS tracking, less intrusive methods for investigating government employees will almost certainly be replaced with electronic surveillance. The potential for abuse that we recognized in *Weaver* is now closer to becoming a reality.

Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge ABDUS-SALAAM concurs in result in an opinion in which Chief Judge LIPPMAN and Judge RIVERA concur.

Judgment reversed, with costs, and matter remitted to the Appellate Division, Third Department, with directions to remand to the Commissioner of Labor for further proceedings in accordance with the opinion herein.