Matter of Brooks v New York State Dept. of Corr. & Community Supervision (2023 NY Slip Op 03962)

Matter of Brooks v New York State Dept. of Corr. & Community Supervision

2023 NY Slip Op 03962

Decided on July 27, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 27, 2023

535544
[*1]In the Matter of Jeremiah Brooks, Petitioner,
v
New York State Department of Corrections and Community Supervision, Respondent.

Calendar Date:June 1, 2023

Before:Egan Jr., J.P., Lynch, Aarons, Fisher and McShan, JJ.

Luibrand Law Firm, PLLC, Latham (Kevin A. Luibrand of counsel), for petitioner.
Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for respondent.

McShan, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Acting Commissioner of Corrections and Community Supervision terminating petitioner's employment.
Petitioner was hired by respondent in 2000 and was later promoted to the position of captain in 2015. In that role, petitioner served as the highest-ranking security staff member of the Albany Training Academy and held various operational and supervisory responsibilities. In July 2020, petitioner became the subject of a State Police criminal investigation based upon allegations of criminal conduct that allegedly took place at the Academy. As part of that investigation, the State Police obtained, among other things, a search warrant pertaining to petitioner's personal cell phone. Ultimately, the State Police investigation concluded, and criminal charges were not pursued. However, during the course of the State Police investigation, respondent learned that the search had revealed that petitioner committed employment-related misconduct by engaging in sexually-explicit text message exchanges with several individuals during periods of time when he was on duty. Respondent thereafter commenced its own investigation and subpoenaed the State Police to provide "[a]ny and all information related to on duty and off duty misconduct collected, developed, or in the possession" of the State Police concerning the criminal investigation into petitioner. The State Police complied with the subpoena, turning over to respondent the cell phone data that had been collected. Upon review of the cell phone data, respondent deduced that petitioner had both sent and received several explicit images and text messages while on duty, some of which depicted petitioner at the Academy with his identification badge in view.
In accordance with Civil Service Law § 75, respondent notified petitioner that he was charged with two counts of misconduct. Charge 1 provided that, during a period of time when petitioner was on duty, "[he] failed to devote all of [his] time and attention to the performance of [his] duties in violation of Employees' Manual sections 2.1, 2.2, 2.36." Charge 2 provided that, during the same period, "[petitioner] failed to model appropriate conduct, ethics, and performance . . . in violation of Employees' Manual section 3.1, sub. M." Petitioner answered and denied the allegations, and, thereafter, a Civil Service Law § 75 (2) hearing ensued. At the conclusion of the hearing, the Hearing Officer issued a determination recommending that petitioner be found guilty of the charges and that his employment be terminated. Thereafter, the Acting Commissioner of Corrections and Community Supervision adopted the Hearing Officer's findings and recommendations and dismissed petitioner from service. Petitioner then commenced this CPLR article 78 proceeding seeking to annul respondent's determination on the grounds that the record [*2]lacked substantial evidence to support the findings that he engaged in misconduct and that the penalty of termination was disproportionate to the offense. After respondent answered, the proceeding was transferred to this Court (see CPLR 7804 [g]).
"Pursuant to Civil Service Law §75 (1), a civil service employee shall not be removed or otherwise subjected to any disciplinary penalty except for incompetency or misconduct shown after a hearing upon stated charges. The standard of review for such a determination made after a disciplinary hearing is whether it is supported by substantial evidence. This is a minimal standard that requires less than a preponderance of the evidence and demands only the existence of a rational basis in the record as a whole to support the findings upon which the determination is based" (Matter of Kohn v County of Sullivan, 214 AD3d 1058, 1059 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). Said differently, "[w]here an administrative agency's decision is supported by substantial evidence, the decision must be sustained by the reviewing court even where the evidence would support a contrary conclusion" (Matter of Rice v New York State Gaming Commn., ___ AD3d ___, ___, 190 NYS3d 517, 521 [3d Dept 2023]; see Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1046 [2018]).
At the outset, petitioner does not dispute that he sent the explicit messages and photographs contained in the record while he was on duty. Rather, the crux of petitioner's contentions is predicated on the assertion that the use of his personal cell phone constituted a technical violation and that the hearing testimony established that he was allowed to use his cell phone while he was on duty. Relatedly, petitioner contends that there was no evidence that the text messages distracted him from devoting the required time and effort to the performance of his duties. In this respect, petitioner contends that respondent did not limit the actual content that he could maintain on his personal cell phone. We disagree with his contentions.
As relevant here, respondent's employee manual states that employees are expected to adhere to the highest standards of ethical conduct and avoid conduct that violates the public's trust or that creates even the appearance of impropriety.[FN1] Section 2.1 of the manual states that "[n]o employee, whether on or off duty, shall so comport himself or herself as to reflect discredit upon [respondent] or its personnel." Section 2.36 provides that "[e]very employee, while on duty, shall devote all his or her time and effort to the performance of their duties" and that "[e]ach employee shall maintain an attitude and posture of alertness at all times." Finally, section 3.1 (m) specifies that "[s]upervisory responsibilities shall include . . . [p]rotecting the integrity and mission of [respondent] and modeling appropriate conduct, ethics, and performance."
The hearing evidence clearly reflected that [*3]petitioner was using his cell phone while on duty to send explicit text messages to various recipients. Although the testimony established that there is no specific rule that prohibits an employee from using a personal cell phone while on duty and outside of a correctional facility, we agree with respondent that the primary rule underlying Charge 1 was not specific to the use of a cell phone and, instead, generally pertained to the requirement that on duty employees devote all of their time and attention to their work. Accordingly, because the general use of petitioner's phone was not what the charge was based upon, his contention that respondent was selectively enforcing a policy on the use of personal phones is without merit (see generally Matter of Phillips v York, 135 AD3d 1231, 1231-1232 [3d Dept 2016]; compare Matter of Girard v City of Glens Falls, 173 AD2d 113, 117 [3d Dept 1991], lv denied 79 NY2d 757 [1992]). As to the substance of the messages, while petitioner characterized his conduct as a "technical" violation and suggested that there was no actual evidence that his conduct affected the performance of his duties, the testimony at the hearing distinguished the incidental use of a cell phone for personal messages from petitioner's deliberate conduct of sending explicit messages and photographs. In other words, there was a rational basis to infer that the explicit nature of petitioner's communications and the corresponding effect on his attention during periods when he was required to focus his attention on his duties differed from the potential distraction arising from more mundane communications that would otherwise be deemed acceptable. Consequently, we find that substantial evidence supports the Hearing Officer's conclusion that petitioner's messaging of explicit content during work hours impacted his attention to his duties and reflected discredit upon respondent, and that such actions constituted a knowing or willful violation of respondent's rules (see generally Minckler v Sullivan County, 216 AD3d 1343, 1344-1345 [3d Dept 2023]; Matter of Capone v Patchogue-Medford Union Free School Dist., 38 AD3d 770, 771-772 [2d Dept 2007]).
We similarly reject petitioner's contentions pertaining to Charge 2. In this respect, petitioner contends that the lack of any dissemination or awareness of the subject messages to his subordinates forecloses a determination that he failed to model appropriate conduct. We disagree, as the relevant rule prohibits employees from engaging in behavior that impacted respondent's integrity and, consequently, the explicit images of petitioner, which sometimes depicted him in uniform and displaying his identification, could rationally be interpreted to violate the mandates of the rule. Petitioner focuses his challenge to the credibility determinations and factual findings of the Hearing Officer concerning evidence of his guilt is without merit, as the record is devoid of any justification for disregarding the deference [*4]paid to such findings (see Matter of Minckler v Sullivan County, 216 AD3d at 1345; Matter of Wales v City of Saratoga Springs, 200 AD3d 1262, 1264 [3d Dept 2021]). Further, to the extent that petitioner focuses his challenge to the sufficiency of evidence on the Hearing Officer's determination that petitioner lacked contrition, we find that the record amply supports the ultimate determination of guilt irrespective of that finding (see Matter of Blamah v New York Off. of the State Comptroller, 207 AD3d 905, 911 [3d Dept 2022]; see generally Matter of Scott v New York State Racing & Wagering Bd., 44 AD3d 338, 339 [1st Dept 2007], lv denied 9 NY3d 817 [2007]; Matter of Scott v Workers' Compensation Bd. of State of N.Y., 275 AD2d 877, 878 [3d Dept 2000]). Altogether, our review satisfies us that both charges are supported by substantial evidence (see Matter of Minckler v Sullivan County, 216 AD3d at 1345; Matter of Walker v City of Plattsburgh, 212 AD3d 936, 940 [3d Dept 2023]; Matter of Blamah v New York Off. of the State Comptroller, 207 AD3d at 911; Matter of Myer Funeral Serv. Corp. v Zucker, 188 AD3d 1488, 1494 [3d Dept 2020]; Matter of Lory v County of Washington, 77 AD3d 1265, 1267-1268 [3d Dept 2010]; Matter of Wagner v Roth, 9 AD3d 583, 584-585 [3d Dept 2004]).
Turning to petitioner's procedural arguments, as an initial matter, contrary to respondent's contention, we find that petitioner adequately preserved his challenges to the warrant and subpoena despite his failure to include them in his CPLR article 78 petition, as both contentions were raised during the administrative proceeding in his posthearing submission (compare Matter of Bottom v Annucci, 26 NY3d 983, 985 [2015]; Matter of Puig v New York State Police, 212 AD3d 1025, 1026 n [3d Dept 2023]). Nonetheless, we find that his contentions are without merit. In this respect, petitioner contends that the warrant lacked sufficient particularity to allow for a search of the data from his cellphone; however, whether the warrant would have passed muster and led to suppression of any evidence procured in the criminal setting is not dispositive to the admissibility of such evidence in an administrative proceeding (see Matter of Boyd v Constantine, 81 NY2d 189, 193 [1993]). Rather, in assessing whether suppression of the cell phone data was warranted during the administrative proceeding, we must "[b]alanc[e] the probable deterrent effect of the exclusionary rule against the detrimental impact upon the truth-finding process" (id. at 195; Matter of Charles Q. v Constantine, 204 AD2d 904, 905-906 [3d Dept 1994], affd 85 NY2d 571 [1995]). In doing so, we find that the value of deterrence is minimal, as the State Police sought a warrant to search petitioner's phone during the course of a lawful investigation into alleged criminal conduct. Moreover, any minimal benefit from deterrence is clearly outweighed by the potential detriment to respondent in excluding such evidence from the investigation into [*5]petitioner's misconduct. In sum, regardless of whether the warrant was sufficiently particular in this respect, the circumstances do not suggest that suppression in this administrative hearing is warranted (see Matter of Boyd v Constantine, 81 NY2d at 193; Matter of Charles Q. v Constantine, 204 AD2d at 905; Matter of Sammis v Rivera, 194 AD2d 612, 612 [2d Dept 1993]).
We similarly find no merit to petitioner's contention that respondent was required to obtain its own warrant to obtain the cell phone data. Notably, the cell phone data in this case was not procured by means of a warrantless search by respondent (see generally Matter of Cunningham v New York State Dept. of Labor, 21 NY3d 515, 520 [2013]) or its agents (see Matter of Boyd v Constantine, 81 NY2d at 194). Accordingly, whether the information could have been procured by such means is irrelevant to the present circumstances. Respondent became aware of the contents on petitioner's cell phone, and the potential misconduct arising therefrom, after the State Police had already effectuated the search pursuant to their own investigation. Under these circumstances, we need not determine whether respondent could have conducted the search under the workplace exception to the warrant requirement (see generally O'Connor v Ortega, 480 US 709 [1987]; Matter of Caruso v Ward, 72 NY2d 432 [1988]), since the evidence was obtained by means of subpoena.
Having determined that suppression is unwarranted based upon any alleged deficiency in the initial search conducted by the State Police, the relevant inquiry turns to whether respondent had the proper authority to issue the subpoena for such information and, if so, whether the subpoena comported with the relevant statutory requirements. To that end, we initially agree with petitioner that Correction Law § 112 (3) did not authorize a subpoena under these circumstances, as the search did not concern petitioner's conduct at a correctional facility or during the performance of community supervision. Nonetheless, as conceded by petitioner, respondent had the authority to issue the subpoena pursuant to Public Officers Law § 61, which permits "[e]very state officer, in any . . . investigation held by him [or her] for the purpose of making inquiry as to the official conduct of any subordinate officer or employee, . . . to issue subpoenas for and require the . . . production of all books and papers relating to any matter under inquiry." In this respect, petitioner contends that respondent failed to provide him with proper notice pursuant to the CPLR. However, while the CPLR is clearly applicable to Public Officers Law § 61 by its plain language, the provisions relied upon by petitioner — CPLR 2303 (a) and 2103 (b) — in asserting the procedural flaws in the issuance of the subpoena relate to notice and service in pending judicial proceedings. Here, the subpoena was issued in this matter during respondent's investigation and there were no pending charges or judicial [*6]proceedings against petitioner, rendering the aforementioned notice provisions inapplicable (see Matter of Plastic Surgery Group, P.C. v Comptroller of the State of N.Y., 34 NY3d 507, 518 [2019]; Matter of Dearstyne v Rensselaer County Dist. Attorney, 262 AD2d 723, 723-724 [3d Dept 1999], lv dismissed 93 NY2d 1036 [1999]; see generally Matter of Constantine v Leto, 157 AD2d 376, 378 [3d Dept 1990], affd 77 NY2d 975 [1991]; compare Matter of State Police Admin. Disciplinary Hearing on Apr. 27, 2004, 13 AD3d 884, 885 [3d Dept 2004]). Accordingly, we reject petitioner's contentions directed toward the validity of the subpoena.
Finally, while we find that substantial evidence supports the finding of guilt, our review of the record persuades us that a modification to the discipline imposed is appropriate. "Judicial review of an administrative penalty is limited to whether, in light of all the relevant circumstances, the penalty is so disproportionate to the charged offenses as to shock one's sense of fairness" (Matter of Gulotta v New York State Thruway Auth., 174 AD3d 1205, 1206 [3d Dept 2019] [internal quotation marks and citations omitted]). Petitioner was employed by respondent for 21 years at the time of the hearing and had a generally unremarkable disciplinary history.[FN2] Further, there is no indication that the messages were disseminated to any of his colleagues or subordinates or that there was a signficant impact on the performance of his duties. To the contrary, the record establishes that petitioner consistently received strong evaluations for his work performance. Further, the record establishes that petitioner expressed remorse to respondent's investigators, noting that he was not proud of his conduct, which he characterized as "unprofessional and even inappropriate." Under these circumstances, we find that the penalty of termination "is so disproportionate to the offense and shockingly unfair as to constitute an abuse of discretion as a matter of law" and, accordingly, we remit the matter for consideration of a less severe penalty (Matter of Rice v New York State Gaming Commn., 190 NYS3d at 522; see Matter of Lalima v New York State Dept. of State, 214 AD3d 1051, 1055 [3d Dept 2023]; Matter of Lewis v New York State Off. of Children & Family Servs., 114 AD3d 1065, 1068 [3d Dept 2014]). Petitioner's remaining contentions, to the extent not directly addressed, have been considered and found unavailing.
Egan Jr., J.P., Aarons and Fisher, JJ., concur.
Lynch, J. (dissenting).
I respectfully dissent only with respect to the majority's determination that modification of the penalty is warranted. In view of petitioner's high-ranking leadership and supervisory role at the Albany Training Academy, and the extraordinarily inappropriate nature of his conduct, which involved the taking and sending of sexually explicit, lewd photographs of himself and corresponding messages, while on duty and in uniform with his identification card displayed, I cannot [*7]agree that the termination penalty constitutes an abuse of discretion as a matter of law (see Matter of Kelly v Safir, 96 NY2d 32, 38-39 [2001]). Stated differently, petitioner's termination is not "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness" (Matter of Bell v Board of Educ. of Union Free School Dist. No. 1 of Town of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974] [internal quotation marks and citation omitted]; accord Matter of Kohn v County of Sullivan, 214 AD3d 1058, 1063 [3d Dept 2023]; Matter of Walker v City of Plattsburgh, 212 AD3d 936, 940 [3d Dept 2023]; Matter of Blamah v New York Off. of the State of Comptroller, 207 AD3d 905, 911 [3d Dept 2022]; Matter of Scuderi-Hunter v County of Delaware, 202 AD3d 1309, 1317 [3d Dept 2022], lv denied 39 NY3d 903 [2022]; Matter of O'Connor v Cutting, 166 AD3d 1099, 1103 [3d Dept 2018]). That is all the more so given that the Hearing Officer found "throughout [petitioner's] testimony a lack of contrition, remorse and failure to accept responsibility for his actions."
ADJUDGED that the determination is modified, on the law, without costs, by annulling so much thereof as imposed a penalty of termination; petition granted to that extent and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.

Footnotes

Footnote 1: Section 2.2 of the employee manual specifies that employees shall not knowingly or willingly violate "any rule, regulation, or [d]irective of [respondent]."

Footnote 2: Petitioner's only prior discipline arose from an incident that took place at the beginning of the State Police investigation, based upon his possession of two unsecured firearms in his motor vehicle at the Academy.