Matter of Myer Funeral Serv. Corp. v Zucker (2020 NY Slip Op 06991)





Matter of Myer Funeral Serv. Corp. v Zucker


2020 NY Slip Op 06991


Decided on November 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 25, 2020

529212

[*1]In the Matter of Myer Funeral Service Corporation, Appellant,
v
Howard A. Zucker, as Commissioner of Health, et al., Respondents.

Calendar Date: October 20, 2020

Before: Garry, P.J., Lynch, Clark, Devine and Reynolds Fitzgerald, JJ.


The Crossmore Law Office, Ithaca (Andrew P. Melendez of counsel), for appellant.
Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for respondents.



Lynch, J.
Appeal from a judgment of the Supreme Court (McBride, J.), entered April 24, 2019 in Tompkins County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Health finding petitioner guilty of violating certain provisions of the Public Health Law.
Petitioner operates Herson Wagner Funeral Home in Tompkins County. On October 16, 2016, Stephen Sedlock — the manager of Herson Wagner — was contacted by the Tompkins County Department of Social Services (hereinafter DSS) to recover and dispose of the remains of a deceased individual (hereinafter decedent) whose body was at the Tompkins County morgue at Cayuga Medical Center.[FN1] Sedlock took preliminary steps to arrange for decedent's burial, including filing a death certificate on October 28, 2016, procuring a casket and obtaining a burial permit with a listed burial date of November 1, 2016. However, he waited until December 12, 2016 to remove decedent's body from the morgue and did not proceed with the burial until the next day.
Due to the delay, respondent Department of Health (hereinafter DOH) commenced a disciplinary action against petitioner alleging that it violated Public Health Law § 4200 (1) and 10 NYCRR 77.12 (g) by, respectively, "fail[ing] to bury a human body within a reasonable time after death" and "neglect[ing] a human body entrusted to its care." Petitioner answered and denied the charges. An evidentiary hearing before an Administrative Law Judge (hereinafter ALJ) ensued, at which petitioner contested the premise that decedent's body had been entrusted to its care for purposes of 10 NYCRR 77.12 (g) and argued that it could not be held liable for violating Public Health Law § 4200 (1) because it was attempting to obtain authorization from the appropriate next of kin to proceed with interment. Following the hearing, the ALJ issued a report sustaining both charges and recommending a $28,000 fine, finding that petitioner's delay stemmed from monetary considerations rather than a bona fide concern about the right to proceed with the burial. Upon petitioner's written exceptions, respondent Commissioner of Health (hereinafter the Commissioner) adopted the ALJ's report and recommendations in full.
Petitioner commenced this CPLR article 78 proceeding seeking to annul the Commissioner's determination on liability as "arbitrary and capricious" and taken in violation of Public Health Law § 4201 (8). In that respect, petitioner argued that it was immune from liability because its delay in burying decedent's body stemmed from a dispute between decedent's cousin and son regarding the right to control decedent's remains (see Public Health Law § 4201 [8]). Petitioner also challenged the penalty imposed as an abuse of discretion. Following joinder of issue, Supreme Court dismissed the petition. Petitioner appeals.
Petitioner argues that the Commissioner's determination that it violated Public Health Law § 4200 (1) and 10 NYCRR 77.12 (g) is not supported by substantial evidence. Although petitioner invoked the arbitrary and capricious standard of review before Supreme Court, the petition generally attacked the Commissioner's liability determinations based upon the proof at the evidentiary hearing, which, as noted by both parties, was required by statute in order to take disciplinary action against petitioner (see Public Health Law § 3451 [3] [a]; [4] [a]; see also Matter of Sorrentino v Axelrod, 150 AD2d 700, 700 [*2][1989]; Matter of Brewer Funeral Home v Axelrod, 73 AD2d 991, 992 [1980]).[FN2] Accordingly, we construe the petition as raising a substantial evidence question (see e.g. Matter of White v County of Sullivan, 101 AD3d 1552, 1554 n 1 [2012], lv dismissed 21 NY3d 988 [2013]; Matter of Brunner v Bertoni, 91 AD3d 1100, 1101 n [2012]).[FN3] "The substantial evidence standard is a minimal standard [that is] less than a preponderance of the evidence and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018] [internal quotation marks, brackets and citations omitted]). "Where substantial evidence exists, the reviewing court may not substitute its judgment for that of the agency, even if the court would have decided the matter differently" (id. at 1046 [citations omitted]).
Public Health Law § 4200 (1) provides that, "[e]xcept in the cases in which a right to dissect [a body] is expressly conferred by law, every body of a deceased person, within this state, shall be decently buried or incinerated within a reasonable time after death" (see Shipley v City of New York, 25 NY3d 645, 657 [2015]). Funeral homes commit "misconduct in the . . . practice of funeral directing" (Public Health Law § 3450 [1] [f]) by, as relevant here, "neglecting . . . a dead human body entrusted" to their care (10 NYCRR 77.12 [g]). Pertinent to the issues of entrustment and delay, "[t]he common-law right of sepulcher gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial or other disposition of the remains, and damages may be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body" (Mack v Brown, 82 AD3d 133, 137 [2011]). Correspondingly, the Legislature has enacted certain statutory provisions insulating funeral homes from civil liability in the performance of their duties. Public Health Law § 4201 (7) provides immunity "for actions taken reasonably and in good faith to carry out the directions of a person who represents that he or she is entitled to control of the disposition of remains." To be protected from liability under that section, the funeral home must also establish, among other things, that it "request[ed] and receiv[ed a] written statement that such person . . . [has] no knowledge that the decedent executed a written instrument . . . or a will containing directions for the disposition of his or her remains and that such person is the person having priority under [Public Health Law § 4201 (2)]" (Public Health Law § 4201 [7] [b]; see Mack v Brown, 82 AD2d at 139). Likewise, Public Health Law § 4201 (8) provides immunity for refusing to provide services relating to the [*3]disposition of a decedent's remains "when control of the disposition of such remains is contested." Such immunity continues until the individual providing funeral services "receives a court order or other form of notification signed by all parties or their legal representatives to the dispute establishing such control" (Public Health Law §4201 [8]). Although Public Health Law § 4201 speaks to immunity from civil liability, we recognize that this same standard of reasonableness and good faith applies to whether a funeral home engaged in misconduct in fulfilling its responsibilities in this matter.
Public Health Law § 4201 (2) (a) sets forth a "next of kin" hierarchy that identifies, in descending priority, which persons have the right to control the disposition of a decedent's remains. As relevant here, the child of a deceased person has a higher priority to control the disposition of that person's remains than the cousin of a deceased person (see Public Health Law § 4201 [2] [a] [i]-[x]). However, as relevant here, if a person of higher priority "is not reasonably available, unwilling or not competent to serve, and such person is not expected to become reasonably available, willing or competent, . . . those persons of the next succeeding priority shall have the right to control the disposition of the decedent's remains" (Public Health Law § 4201 [2] [b]).
Turning first to the Commissioner's finding that petitioner violated Public Health Law § 4200 (1), DOH elicited testimony from multiple witnesses that decedent's body was in an advanced state of decomposition when Sedlock retrieved it from the morgue on December 12, 2016. Three witnesses testified, either based upon their own knowledge or from complaints by morgue personnel, that decedent's body was producing a strong odor by early November, prompting morgue staff to express concern. One witness also noted that, at a certain point, the liquified by-products of decedent's remains became visible on the outside of the body bag. A medical social worker at Cayuga Medical Center testified that the length of time that decedent's body remained at the morgue was among the longest she had encountered. Although Sedlock testified that he did not notice an odor or liquid emanating from the remains when he visited the morgue between October 2016 and December 2016, "we will not weigh conflicting testimony or second guess the credibility determinations of the administrative factfinder" (Matter of Perez v New York State Justice Ctr. for the Protection of People with Special Needs, 170 AD3d 1290, 1293 [2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 903 [2019]). In light of the foregoing, substantial evidence supports the Commissioner's determination that the approximate six-week delay in disposing of decedent's body constituted an unreasonable amount of time under the circumstances presented.
As to whether the Commissioner's finding ran afoul of Public Health Law § 4201 (8), DOH proffered evidence that, after DSS informed Sedlock that decedent's body was at the morgue, it became aware of a bank account in decedent's name that contained approximately $26,000 and that decedent had a son. DSS sent the son a letter on October 20, 2016 informing him that DSS "require[d] [his] permission and assistance to make further arrangements for final inter[]ment" and directing him to contact Herson Wagner. DSS then withdrew itself from the matter because decedent's account balance disqualified him from county assistance with burial costs. The son did not respond, but the cousin came forward and informed Sedlock that the son was homeless, "mentally unstable, [and] very difficult to get ahold of." On October 25, 2016, the cousin executed a form entitled "At-Need Written Statement of [*4]Person having the Right to Control Disposition" (hereinafter the authorization form) so that Sedlock could proceed with making arrangements for the burial. The authorization form represented that the cousin was the "person having priority to control the disposition [of decedent's remains] in accordance with [Public Health Law § 4201 (2)]" and had "no knowledge that . . . decedent executed a will containing directions for the disposition of his . . . remains, or designated an agent by executing a written instrument pursuant to [that statute]." Sedlock also prepared a contract delineating the services that Herson Wagner would provide for the sum of $9,565 and asked the cousin to have the son sign the invoice, as he wanted "the closest relative to sign off on what [Herson Wagner was] being authorized to do."
On October 28, 2016, Sedlock attempted to withdraw funds from decedent's bank account to cover the services. However, the bank refused to release the funds on the ground that Sedlock did not have authorization from the son and informed him that "a cousin is not on the bank's hierarchy for next of kin." As reflected in an October 31, 2016 email, Sedlock then notified the morgue that he would be unable to pick decedent up on that date as originally scheduled because "DSS will not cover for the services," he had encountered issues obtaining the funds in decedent's bank account, and decedent's son "was not mentally stable enough to give any kind of consent."
At the hearing, an employee of the morgue testified that the son unexpectedly called the morgue on November 2, 2016 and asked for decedent's body to be released to Herson Wagner. On November 15, 2016, the son accompanied the cousin to Herson Wagner in order to complete outstanding paperwork. However, Sedlock did not permit the son to sign the paperwork at that time because he lacked identification. In early December 2016, Thomas Fuller, the Director of DOH's Bureau of Funeral Directing, was contacted by a representative from the morgue to review the matter. During the hearing, Fuller testified that, once the death certificate and burial permit had been filed, there was no legal impediment to proceeding with the burial. He further noted that, by filing a death certificate for decedent, Herson Wagner had represented to his office that "[it was] in charge of the burial at that point." Fuller's office contacted Sedlock and requested "forms showing who was in charge of disposition or who had claimed rights of disposition." In response, Sedlock provided a written statement explaining that DSS had withdrawn from the matter and that he was having trouble accessing the funds from decedent's bank account to proceed with the burial. Upon further direction from Fuller's office, Sedlock retrieved decedent's body from the morgue on December 12, 2016 and buried it the next day. Petitioner was subsequently paid for its services in full, plus late fees, from the bank account in decedent's name.
Given the evidence that Sedlock was informed that the son was homeless, difficult to get ahold of and had mental health issues, and the cousin signed an authorization form making the representations required by Public Health Law § 4201 (7), Sedlock had a good faith basis to believe that the cousin possessed the right to control the disposition, which would have insulated petitioner from civil liability for directly disposing of decedent's body (see Public Health Law § 4201 [2] [b]; see also Public Health Law § 4201 [7]). That is particularly so because the record does not reflect any actual conflict between the son and the cousin. To the contrary, the son called the morgue in early November [*5]2016 to have decedent released to Herson Wagner and attempted to sign necessary paperwork later that month. The record supports the Commissioner's determination that the issue of payment, and not the son's status, is what caused the delay here. Moreover, the Commissioner's finding that decedent's body was entrusted to petitioner's care during the period of delay is supported by the record. Although petitioner correctly notes that the term "entrusted" as used in 10 NYCRR 77.12 (g) is undefined, an agency's interpretation of its own regulations is generally entitled to deference so long as it is not irrational or unreasonable (see Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019]; Matter of Xerox Corp. v New York State Tax Appeals Trib., 110 AD3d 1262, 1264-1265 [2013]). Without articulating a precise definition of that term, the Commissioner argues that Sedlock's retention of the authorization form executed by the cousin, his filing of the burial permit, and his attempt to collect on invoices established the element of entrustment. We agree that such proof, in conjunction with DSS's action of making Herson Wagner responsible for providing funeral services to decedent (see generally Black's Law Dictionary [11th ed 2019, entrust] ["To give (a person) the responsibility for something"]) and Herson Wagner's failure to relinquish such responsibility, supports the Commissioner's finding that decedent's body was entrusted to petitioner's care notwithstanding the absence of a formal written agreement to that affect. Insofar as petitioner waited approximately six weeks to dispose of decedent's body after it had been entrusted to its care, substantial evidence supports the Commissioner's determination that petitioner engaged in misconduct in the practice of funeral directing by violating Public Health Law § 4200 (1) and 10 NYCRR 77.12 (g).[FN4]
We are unpersuaded by petitioner's assertion that the $28,000 fine constituted an abuse of discretion. "An administrative penalty falls within the discretion of the reviewing agency and will not be disturbed unless it is so disproportionate to the offense that it shocks one's sense of fairness" (Matter of Epelboym v Board of Regents of the State of N.Y., 174 AD3d 1182, 1183 [2019] [citations omitted]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974]; Matter of Clumber Transp. Corp. [Workers' Compensation Bd.], 160 AD2d 1186, 1187 [1990]). As relevant here, "[t]he [C]ommissioner may revoke[,] suspend . . . or otherwise discipline . . . [a] funeral firm in accordance with the provisions of [Public Health Law article 34] upon proof that . . . the corporation . . . has violated any of the . . . rules and regulations of the [C]ommissioner" (Public Health Law § 3450 [1] [a]) or "has committed acts of [*6]misconduct in the conduct of the business or practice of funeral directing" (Public Health Law § 3450 [1] [f]). A person who engages in the business of funeral directing "in violation of any provisions of [Public Health Law article 34] shall be liable to a maximum civil penalty of [$1,000]" (Public Health Law § 3456 [1]). "Each day during which . . . any such prohibited business or practice is continued shall be deemed a separate violation" (Public Health Law § 3456 [2]).
Here, the $28,000 fine imposed by the Commissioner amounted to $1,000 per day from November 15, 2016 (the date decedent's son went to Herson Wagner to authorize payment) to December 13, 2016 (the date of burial) and was $14,000 less than the fine sought by DOH. Insofar as petitioner's misconduct resulted in decedent's body being left at the morgue for an extended period of time in an advanced state of decomposition, thereby posing a health risk to morgue employees, we cannot conclude that the penalty imposed shocks one's sense of fairness so as to constitute an abuse of discretion.
Garry, P.J., Clark, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: At that time, Herson Wagner was the designated on-call funeral home that DSS contacted to provide funeral services for indigent and otherwise unclaimed individuals.

Footnote 2: We note that petitioner raised a substantial evidence argument in its posthearing written submission to the ALJ, claiming that DOH's charges against it were "not substantiated by the record."

Footnote 3: As such, Supreme Court should have transferred the proceeding to this Court (see CPLR 7804 [g]; Matter of Thibodeau v Northeastern Clinton Cent. School Bd. of Educ., 39 AD3d 940, 941 [2007]). Nevertheless, "[w]e will treat the matter as having been properly transferred and decide the substantial evidence issue de novo" (Matter of White v County of Sullivan, 101 AD3d at 1554 n 1 [internal quotation marks and citation omitted]).

Footnote 4: Petitioner asserts that the Commissioner's determination on liability is also arbitrary and capricious because it is "without a sound basis in reason or regard to the facts." However, because the Commissioner's findings were made after a quasi-judicial hearing required by statute, the arbitrary and capricious standard does not apply (see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). In any event, "[r]ationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard" (id.) and, for the reasons discussed above, the Commissioner's determination on liability is rational.