Matter of Walker v City of Plattsburgh (2023 NY Slip Op 00021)

Matter of Walker v City of Plattsburgh

2023 NY Slip Op 00021

Decided on January 5, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 5, 2023

535027
[*1]In the Matter of Nicholas A. Walker, Petitioner,
v
City of Plattsburgh et al., Respondents.

Calendar Date:November 17, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Satter Ruhlen Law Firm, PLLC, Syracuse (Mimi C. Satter of counsel), for petitioner.
Goldberger and Kremer, Albany (Brian S. Kremer of counsel), for respondents.

Ceresia, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Warren County) to review a determination of respondent Mayor of the City of Plattsburgh terminating petitioner's employment as a firefighter/emergency medical technician.
On November 30, 2018 at an apartment complex in the City of Plattsburgh, Clinton County, petitioner, a firefighter and emergency medical technician, responded with his partner to a 911 call regarding a man lying in a fifth-floor hallway requesting medical assistance. When petitioner reached the patient, he was responsive and communicative, asking for help. Petitioner and his partner put the patient on a stretcher, securing him with the stretcher's leg and waist straps but not its shoulder straps. They wheeled the stretcher to the elevator and transported the patient down to the first floor, through the building's lobby and outside to where an ambulance was waiting. As they were leaving the building, the patient's arm went limp and dropped down to the side of the stretcher, causing petitioner to lift the patient's arm and place it across his chest. While petitioner and his partner were attempting to transfer the patient into the ambulance, the patient's upper body slipped off the stretcher and his head hit the back of the ambulance. The patient then fell to the ground and the stretcher, to which he was still attached, tipped over on its side. Petitioner and his partner detached the patient from the stretcher, attended to his head wound and attempted CPR. Other firefighters eventually arrived on the scene and the patient was loaded into the ambulance and brought to the hospital, where he was pronounced dead. An autopsy revealed that the patient sustained blunt force trauma to the head when he fell off the stretcher, killing him in a matter of seconds.
Within hours of the incident, petitioner filled out an incident report and a patient care form describing what had happened and filed these documents with the City of Plattsburgh Fire Department. The following day, petitioner was interviewed by the City of Plattsburgh Police Department regarding the incident and gave a sworn written statement to a detective. Moving forward, petitioner continued to work as a firefighter and emergency medical technician for over two years. During this time, the State Department of Health conducted an investigation of the incident, the result of which was petitioner agreeing to pay a $5,000 fine and complete additional training, and respondent City of Plattsburgh settled a wrongful death claim brought by the patient's family.
In January 2021, petitioner was served with a notice of discipline containing seven charges of misconduct, specifying that he knowingly made false statements in the incident report, patient care form and statement to the police. A hearing was conducted pursuant to Civil Service Law § 75 (2), and the Hearing Officer recommended that all charges be dismissed. Respondent Christopher [*2]C. Rosenquest, the Mayor of the City of Plattsburgh (hereinafter the Mayor), reviewed the record, rejected the recommendation of the Hearing Officer, found petitioner guilty of all seven charges of misconduct and terminated his employment. Petitioner then commenced the instant CPLR article 78 proceeding, arguing that the Mayor's determination was not supported by substantial evidence, and Supreme Court transferred the proceeding to this Court (see CPLR 7804 [g]).
As a preliminary matter, and contrary to petitioner's contention, the charges of misconduct were timely filed. While disciplinary proceedings brought under the Civil Service Law must generally be commenced within 18 months after the alleged misconduct occurred, a statutory exception provides that the 18-month limitations period is inapplicable when the misconduct "would, if proved in a court of appropriate jurisdiction, constitute a crime" (Civil Service Law § 75 [4]). In determining whether this exception applies, our inquiry is limited to a review of the "misconduct complained of and described in the [disciplinary] charges" (Civil Service Law § 75 [4]), and we may not consider proof submitted at an ensuing disciplinary hearing (see Matter of Snowden v Village of Monticello, 166 AD3d 1451, 1452 [3d Dept 2018]; Matter of De Guzman v State of N.Y. Civ. Serv. Commn, 129 AD3d 1189, 1192 [3d Dept 2015], lv denied 26 NY3d 913 [2015]; Matter of Rodriguez v County of Albany, 105 AD3d 1124, 1126 [3d Dept 2013]). In other words, in making a threshold determination of timeliness, it is irrelevant whether the charges were ultimately established at a hearing. Here, the charges alleged misconduct which, if proved, satisfied each of the elements of the crimes of offering a false instrument for filing in the second degree (see Penal Law § 175.30) (three charges), making a punishable false written statement (see Penal Law § 210.45), falsifying business records in the second degree (see Penal Law § 175.05), making an apparently sworn false statement in the second degree (see Penal Law § 210.35) and perjury in the third degree (see Penal Law § 210.05). Therefore, the statutory exception to the 18-month limitations period applied and the charges were not untimely.
Turning to the question of whether the Mayor's determination was supported by substantial evidence, this is "a minimal standard that requires less than a preponderance of the evidence and demands only the existence of a rational basis in the record as a whole to support the findings upon which the determination is based" (Matter of Blamah v New York Off. of the State Comptroller, 207 AD3d 905, 906 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]). "In conducting our review, this Court may not substitute its own judgment for that of respondent[s], even when evidence exists that could support a different result" (Matter of Snowden v Village of Monticello, 166 AD3d at 1453 [internal quotation marks, brackets and citations [*3]omitted]). Our role is to assess whether competent proof supports the drawing of inferences "that are reasonable and plausible, not necessarily the most probable" (Matter of Young v Village of Gouverneur, 145 AD3d 1285, 1286 [3d Dept 2016] [internal quotation marks and citations omitted]). Furthermore, "[t]he credibility determinations of a hearing officer are not binding upon the official charged with making a final determination, who, in the exercise of his or her duty to weigh the evidence and resolve conflicting testimony, may make different factual findings and conclusions, provided they are supported by substantial evidence" (Matter of O'Connor v Cutting, 166 AD3d 1099, 1102 [3d Dept 2018]).
Petitioner concedes that he provided false information in the incident report, patient care report and statement to the police. Thus, as the parties agree, the only issue before this Court is whether the hearing evidence sufficiently established that he did so knowingly. The false statements, which are not in dispute, can be described as follows: petitioner indicated that the patient became unresponsive and was not breathing adequately while in the hallway or elevator, but video evidence and hearing testimony revealed that the patient was alert and responsive as he was transported through the hallway, elevator, building lobby and exterior doors; petitioner claimed that he radioed for assistance when the patient became unresponsive in the hallway or elevator, but the hearing evidence showed that he did not call for backup until after the patient fell off the stretcher and struck his head on the ambulance; petitioner asserted that he assessed the patient and took his pulse in the lobby, yet surveillance video reflected that petitioner did not take these actions at that time; and petitioner indicated that CPR was performed continuously after the patient fell, but video evidence showed that CPR was not begun until several minutes after the patient's fall, and was only conducted for a short time.
Petitioner testified at the hearing that, at the time that he made the false statements, he was experiencing stress due to the trauma of losing a patient as well as a lack of sleep. According to petitioner, while he believed his statements to be true when he made them, he had since had the opportunity to review the video evidence and had come to understand that these statements were false. We acknowledge that petitioner provided what can be characterized as a plausible, innocent explanation for the false statements. However, it is also true that a different conclusion can be reached when contemplating the statements in their totality. That is, as the Mayor noted, the statements can be viewed as having knowingly been made in an effort to mitigate against culpability on petitioner's own part. Articulated another way, the statements, particularly when considered collectively, can be deemed to have painted a picture of the patient being in a more dire condition than [*4]he might actually have been in prior to striking his head, and also portrayed petitioner as undertaking certain responsive efforts to a degree that did not, in reality, occur. Accordingly, given that the interpretation of the evidence and inferences drawn by the Mayor are reasonable and plausible, we are bound to conclude that the determination that petitioner knowingly made false statements is rationally based and supported by substantial evidence (see Matter of Blamah v New York Off. of State Comptroller, 207 AD3d at 908-909; Matter of Wales v City of Saratoga Springs, 200 AD3d 1262, 1264 [3d Dept 2021]; Matter of Snowden v Village of Monticello, 166 AD3d at 1454).
As to the penalty imposed, we find that the Mayor's decision to terminate petitioner's employment was not "so disproportionate to the offenses as to be shocking to one's sense of fairness" (Matter of Lory v County of Washington, 77 AD3d 1265, 1268 [3d Dept 2010] [internal quotation marks, brackets and citations omitted]; see Matter of Blamah v New York Off. of State Comptroller, 207 AD3d at 911; Matter of Gulotta v New York State Thruway Auth., 174 AD3d 1205, 1206 [3d Dept 2019]). We see no reason to disturb the penalty imposed by the Mayor, who found, notwithstanding petitioner's positive accomplishments, that he had inhibited the investigation into the patient's untimely death and, seeking to avoid personal responsibility, placed his own interests above those of the City of Plattsburgh Fire Department, the patient's family and the public at large.
Garry, P.J., Lynch, Reynolds Fitzgerald and McShan, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.