Matter of Hardy v Kraham (2024 NY Slip Op 00474)

Matter of Hardy v Kraham

2024 NY Slip Op 00474

Decided on February 1, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 1, 2024

535654
[*1]In the Matter of Nicholas Hardy, Petitioner,
v
Jared M. Kraham, as Mayor and Commissioner of Public Safety for the City of Binghamton, Respondent.

Calendar Date:December 13, 2023

Before:Garry, P.J., Lynch, McShan and Mackey, JJ.

Law Office of Ronald R. Benjamin, Binghamton (Ronald R. Benjamin of counsel), for petitioner.
Weaver Mancuso Brightman PLLC, Rochester (John A. Mancuso of counsel), for respondent.

McShan, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Broome County) to review a determination of respondent terminating petitioner's employment.
Following a September 2019 incident between petitioner and another officer, the Binghamton Police Department (hereinafter BPD) and, subsequently, corporation counsel for the City of Binghamton, Broome County commenced an investigation into petitioner, then a sergeant with the BPD, encompassing allegations that petitioner had engaged in a pattern of misconduct tracing back as early as May 2018. The investigation encompassed certain misconduct that occurred while petitioner was operating under a Last Chance Agreement (hereinafter LCA) due to prior misconduct that he had stipulated to being guilty of, as well as alleged misconduct that had occurred after the expiration of the LCA. As a result of the investigation, petitioner was served with formal charges of misconduct consisting of 13 separate charges that encompassed violations of various BPD general orders and City policies regarding workplace violence, discrimination, harassment, retaliation and sexual harassment. Petitioner answered, and, in a subsequently filed amended answer, alleged that the charges against him were brought in retaliation for his support of a racial discrimination claim filed by another BPD officer.
A hearing was held pursuant to Civil Service Law § 75 (1), after which the Hearing Officer sustained one charge in full, partially sustained four others and recommended, in sum and substance, "discipline just short of termination." The Hearing Officer also found that the disciplinary proceeding had an independent basis and was not brought in retaliation. After reviewing the Hearing Officer's recommendation, respondent, in a lengthy and detailed decision, adopted and rejected the recommendation in part by fully sustaining six charges and partially sustaining three others. Based upon the sustained charges, respondent terminated petitioner's employment as a police officer. Petitioner thereafter commenced the instant CPLR article 78 proceeding seeking to annul respondent's determination and have his position reinstated. Supreme Court transferred the proceeding to this Court based upon a question of substantial evidence (see CPLR 7804 [g]).
Petitioner contends that respondent violated petitioner's right to due process and a fair and impartial hearing. We find that his various arguments lack merit. Initially, as to petitioner's suggestion that respondent improperly rejected the Hearing Officer's conclusions, we note that Civil Service Law § 75 (2) "requires that the determination with respect to the employee's status be made by the officer who has authority to remove the employee" (Matter of McComb v Reasoner, 29 AD3d 795, 799 [2d Dept 2006]; see Matter of Martin v Platt, 191 AD2d 758, 759 [3d Dept 1993], lv denied 82 NY2d 652 [1993]) and, "where, as here, an officer having the power to [*2]remove an employee designates someone else to conduct the underlying disciplinary hearing, the record of such hearing shall be referred back to such officer for review and decision" (Matter of Zlotnick v City of Saratoga Springs, 122 AD3d 1210, 1215 [3d Dept 2014] [internal quotation marks, ellipses, brackets and citation omitted]). Thus, the proceeding was properly referred to respondent as the appointing authority, who was authorized "to weigh the evidence and resolve conflicting testimony . . . [and] make different factual findings and conclusions, provided they are supported by substantial evidence" (Matter of O'Connor v Cutting, 166 AD3d 1099, 1102 [3d Dept 2018]; accord Matter of Walker v City of Plattsburgh, 212 AD3d 936, 938-939 [3d Dept 2023]).
As to petitioner's related contention that respondent exhibited bias and prejudgment by rejecting the Hearing Officer's recommendations, we note that "an appearance of impropriety is insufficient to set aside an administrative determination; petitioner must provide factual support for [his] claim of bias and prove that the outcome flowed from that bias" (Matter of Zlotnick v City of Saratoga Springs, 122 AD3d at 1212 [internal quotation marks and citation omitted]). As we have already indicated, respondent was empowered to make his own credibility determinations and conclusions, "provided they are supported by substantial evidence" (Matter of Walker v City of Plattsburgh, 212 AD3d at 938-939 [internal quotation marks and citation omitted]; see Matter of Abraham v Board of Regents of State of N.Y., 216 AD2d 812, 813 [3d Dept 1995]). To this end, respondent, the recently-appointed mayor at the time of the decision, had no personal, let alone extensive, involvement in the proceeding before his review of the Hearing Officer's recommendations (compare Matter of Morgan v Warren County, 191 AD3d 1129, 1131 [3d Dept 2021]; Matter of Ashe v Town Bd. of the Town of Crown Point, N.Y., 97 AD3d 1022, 1023 [3d Dept 2012]). The mere fact that respondent rejected the testimony of petitioner and the witnesses he presented on his behalf, who offered a conflicting account of the facts, does not establish that respondent's decision was based upon prejudgment or the result of bias (see Matter of Blamah v New York Off. of the State Comptroller, 207 AD3d 905, 908 [3d Dept 2022]; Matter of Pierre-Louis v New York State Justice Ctr. for the Protection of People with Special Needs, 182 AD3d 842, 843 [3d Dept 2020]; Matter of Perryman v Village of Saranac Lake, 64 AD3d 830, 835 [3d Dept 2009]; Matter of Crossman-Battisti v Traficanti, 235 AD2d 566, 567 [3d Dept 1997]). Moreover, petitioner's insinuation that respondent simply adopted the position of corporation counsel wholesale has no support in the record (see Matter of Blamah v New York Off. of the State Comptroller, 207 AD3d at 908; Matter of Scott v New York State Racing & Wagering Bd., 44 AD3d 338, 339 [1st Dept 2007], lv denied 9 NY3d 817 [2007]; see also Matter of Scott [*3]v Workers' Compensation Bd. of State of N.Y., 275 AD2d 877, 878 [3d Dept 2000]).[FN1]
Petitioner also suggests that he was deprived of due process in the proceeding because respondent improperly found him guilty of uncharged misconduct. However, our review reveals that petitioner's characterization of the charges upon which he relies for this proposition are unfounded. The charge in question concerned petitioner's acts of intimidation following the treatment of a prisoner in custody during petitioner's shift. To this point, although respondent's decision referenced the belief that petitioner engaged in improper treatment of the prisoner, such facts only provided background for the interaction between petitioner and a subordinate officer during which petitioner made threatening statements (see Matter of Alves v New York City Hous. Auth., 180 AD3d 553, 554 [1st Dept 2020]; see also Matter of Rodriguez v State Bd. for Professional Med. Conduct, 110 AD3d 1268, 1272 [3d Dept 2013]). Accordingly, petitioner's suggestion that he did not receive proper notice that he was being charged with prisoner neglect is without merit (see Matter of Zlotnick v City of Saratoga Springs, 122 AD3d at 1211-1212; Matter of McKenzie v Board of Educ. of the City Sch. Dist. of Albany, 100 AD3d 1096, 1098 [3d Dept 2012]). Moreover, respondent's determination that petitioner's explanation of the event reflected poorly on his credibility is supported by substantial evidence, as the accounts provided by the various witnesses at the hearing provided justification for rejecting petitioner's account (see Matter of Crossman-Battisti v Traficanti, 235 AD2d at 567).
Turning to petitioner's claim that the proceeding was borne from a retaliatory motive, "Civil Service Law § 75-b prohibits a public employer from taking disciplinary action to retaliate against an employee for reporting improper governmental action" (Matter of Kowaleski [New York State Dept. of Correctional Servs.], 16 NY3d 85, 91 [2010] [internal quotation marks and citation omitted]; accord Lilley v Greene Cent. Sch. Dist., 168 AD3d 1180, 1181 [3d Dept 2019]). "To assert a whistleblower claim under Civil Service Law § 75-b, [a] plaintiff must allege, (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which the plaintiff reasonably believes to be true and which he or she reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action" (Lilley v Greene Cent. Sch. Dist., 168 AD3d at 1182 [internal quotation marks, brackets and citations omitted]; see Matter of O'Hara v Board of Educ., Yonkers City Sch. Dist., 198 AD3d 896, 900 [2d Dept 2021]). "Although a claim pursuant to Civil Service Law § 75-b cannot be sustained when a public employer has a separate and independent basis for the action taken, a disciplinary [*4]action may be retaliatory even where an employee is guilty of the alleged infraction" (Lilley v Greene Cent. Sch. Dist., 168 AD3d at 1181 [internal quotation marks, emphasis, brackets and citations omitted]).
Initially, petitioner's claim that respondent did not independently assess his retaliation claim warrants little discussion, as it is evident from the face of the determination that respondent afforded the allegations of retaliatory motive a separate and independent analysis from the allegations of misconduct (see Matter of Kowaleski [New York State Dept. of Correctional Servs.], 16 NY3d at 91-92). As to the merits, our review of the record satisfies us that respondent's rejection of petitioner's retaliation claim is amply supported. In essence, petitioner's contentions are predicated on two separate theories that would establish the retaliatory motive of the investigation and proceeding seeking his termination. We first dispense with petitioner's contention that respondent demonstrated a retaliatory motive by charging petitioner in a separate proceeding even though several of the charges pertained to acts that occurred while he was subject to the LCA. However, as noted in respondent's determination, the LCA did not permit the chief of police to terminate petitioner without a hearing upon the commission of further misconduct while employed under the LCA. Rather, the prescribed penalty encompassed a potential extension of his temporary demotion to patrol officer or a permanent imposition of that demotion. More importantly, petitioner points to no authority either in the LCA or elsewhere that would preclude bringing separate charges in a termination proceeding, as occurred here (see Civil Service Law § 75 [1]). In other words, neither the LCA nor any other authority establish that BPD was limited to demoting petitioner for any further misconduct that occurred while the LCA was in effect rather than pursuing a separate disciplinary proceeding if it was determined that such misconduct warranted a more significant penalty. Accordingly, the fact that petitioner engaged in misconduct during the period that he was subject to the LCA but was ultimately serious enough to charge him in a separate proceeding does not support a retaliatory motive.
Petitioner further contends that the temporal proximity of the charges to those events relevant to his "support" of his fellow officer's discrimination claim indicate that the BPD and the City harbored a discriminatory motive. However, the testimony at the hearing reflected that the investigation conducted by the chief of police and, ultimately, corporation counsel for the City was precipitated by an incident between petitioner and a subordinate officer that ultimately formed the grounds for one of the charges of misconduct. The investigation expanded when City officials found that petitioner had submitted official reports of the incident that differed greatly from the accounts given by the subordinate officer [*5]and another witness, and when witnesses exhibited fear of retaliation on the part of petitioner. Further, the testimony of the chief reflected that he directed petitioner's superior officers to document petitioner's behavior when he became aware of the incident with the subordinate officer, which was later submitted to corporation counsel. The chief then contacted City officials based on his vague knowledge of "some type of ongoing investigation involving [petitioner] that [the chief] wasn't completely aware of," and that he was advised by a City official that the investigation and any future complaints about petitioner should be handled by corporation counsel, given "the concurrent investigations they were already conducting." As to the whistleblower conduct of his fellow officer, a City official testified that she was familiar with the complaint of petitioner's fellow officer against BPD filed with the Division of Human Rights and, notably, that petitioner never appeared as a witness nor gave a statement in that proceeding, a fact that is uncontroverted by petitioner. Considering the record in its entirety, petitioner's tenuous involvement in another officer's discrimination claim and the timing of any prior investigations fail to establish a retaliatory motive, inasmuch as a separate and independent basis for seeking discharge existed by virtue of the misconduct that precipitated the investigation and was ultimately sustained following the hearing (see Matter of Lin v New York City Dept. of Educ., 191 AD3d 431, 434 [1st Dept 2021], lv denied 37 NY3d 913 [2021]; Matter of Brey v Board of Educ. of Jeffersonville-Youngsville Cent. School Dist., 245 AD2d 613, 615 [3d Dept 1997]; Matter of Colao v Village of Ellenville, 223 AD2d 792, 793-794 [3d Dept 1996], lv dismissed & denied 87 NY2d 1041 [1996]; see generally Palmer v Niagara Frontier Transp. Auth., 56 AD3d 1245, 1246 [4th Dept 2008]).
Finally, we reject petitioner's contention that the penalty in this case was disproportionate to the sustained misconduct. The record supports respondent's conclusion that petitioner had engaged in a pattern of insubordination and threatening behavior harmful to BPD and the City and that there was little indication that his behavior would improve in the future. This is particularly evident when considering petitioner's history of prior misconduct, which involved the conduct that ultimately resulted in the aforementioned LCA. Accordingly, under the circumstances presented, we do not find that termination of petitioner's employment is so disproportionate a penalty as to be shocking to one's sense of fairness (see Matter of Minckler v Sullivan County, 216 AD3d 1343, 1345 [3d Dept 2023]; Matter of Walker v City of Plattsburgh, 212 AD3d at 940; Matter of Auxier v Town of Laurens, 23 AD3d 912, 914 [3d Dept 2005]; Matter of Correll v Bucci, 19 AD3d 919, 921 [3d Dept 2005]). Petitioner's remaining arguments, to the extent not explicitly addressed, have been considered and [*6]found without merit.
Garry, P.J., Lynch and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs.

Footnotes

Footnote 1: To the extent that we liberally construe petitioner's brief as raising an argument that the sustained charges are unsupported by substantial evidence, our review of the record satisfies us that such a contention lacks merit. "In conducting our review, this Court may not substitute its own judgment for that of respondent, even when evidence exists that could support a different result" (Matter of Snowden v Village of Monticello, 166 AD3d 1451, 1453 [3d Dept 2018] [internal quotation marks, brackets and citations omitted]). Petitioner does not articulate any specific deficiencies in the evidence supporting respondent's determinations as to the specific charges and the sustained violations of the identified general orders and the City's anti-harassment, anti-retaliation and workplace violence policies. Rather, to the extent that petitioner's brief even raises this argument, he merely takes issue with respondent's rejection of the credibility determinations of the Hearing Officer. However, respondent's detailed decision articulates various reasons for rejecting those determinations, including, among other things, contemporaneous proof of petitioner's communications and statements to other officers that cast doubt on the credibility of the testimony of petitioner's witnesses that could potentially support a different factual finding. As it is not the job of this Court to second guess the resolution of conflicting proof when engaging in substantial evidence review, we find no justification to disturb respondent's determinations relative to the sustained charges (see Matter of Brooks v New York State Dept. of Corr. & Community Supervision, 218 AD3d 1096, 1100 [3d Dept 2023]; see generally Matter of Berenhaus v Ward, 70 NY2d 436, 444 [1987]).