Matter of Rensselaer County Dept. of Social Servs. v McDonald (2025 NY Slip Op 06943)

Matter of Rensselaer County Dept. of Social Servs. v McDonald

2025 NY Slip Op 06943

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

CV-24-1372
[*1]In the Matter of Rensselaer County Department of Social Services, as Operator of Van Rensselaer Manor, Petitioner,
vJames . McDonald, as Commissioner of Health, Respondent.

Calendar Date:October 17, 2025

Before:Clark, J.P., Pritzker, Lynch, Powers and Mackey, JJ.

Carl J. Kempf III, County Attorney, East Greenbush (Linda B. Johnson of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondent.

Clark, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Rensselaer County) to review a determination of respondent finding that petitioner had violated certain regulations and imposing a penalty.
Petitioner operates the Van Rensselaer Manor (hereinafter the facility), a long-term care and skilled nursing facility in the City of Troy, Rensselaer County. Such facilities are required by Department of Health (hereinafter DOH) regulations to "establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment in which residents reside and to help prevent the development and transmission of disease and infection" (10 NYCRR 415.19; see RSRNC, LLC v McDonald, ___ AD3d ___, ___, 239 NYS3d 330, 332 [3d Dept 2025]). In accordance with an executive order issued in response to the COVID-19 pandemic, DOH issued specific guidance for "the prevention and infection control of COVID-19 at nursing homes," which was to "be effective immediately" and "supersede any prior conflicting guidance" (Executive Order [A. Cuomo] No. 202.1 [9 NYCRR 8.202.1]). During the time frame in question, that guidance — which was memorialized in a March 13, 2020 Health Advisory Memo — required nursing homes to suspend "all visitation except when medically necessary." The prohibition on visitation was lifted in a July 10, 2020 Health Advisory Memo authorizing nursing homes to commence outdoor in-person visitation, along with limited indoor visitation, as soon as July 15, 2020, provided they "me[t] specific benchmarks and develop[ed] a reopening plan under the NY Forward Safety Plan."
After DOH conducted a regulatory inspection of the facility on July 23, 2020 (see Public Health Law § 2803 [1] [a]), and an attempted inspection on September 30, 2020, it issued a statement of charges alleging, among other things, that the facility violated required COVID-19 protocols by commencing outdoor visitation prior to issuance of the July 10, 2020 Health Advisory Memo, failed to ensure that residents and visitors complied with mask mandates, and violated Public Health Law § 2803 (1) (a) by refusing to provide DOH surveyors with access to the facility during the September 2020 attempted inspection. Petitioner answered the charges and asserted seven affirmative defenses.
A hearing was held before an Administrative Law Judge (hereinafter ALJ) on three dates between February and April 2021. During the March 2021 hearing date, the ALJ granted a motion by DOH to strike certain language from charge 2. Following the close of proof, the ALJ issued a report that recommended sustaining charges 1, 2 and 4 [FN1] and imposing a civil penalty of $8,000.
Petitioner and DOH submitted written exceptions to the ALJ's report. Upon reviewing the administrative record, respondent adopted the ALJ's recommendations as to liability and sustained charges 1, 2 and 4. However, respondent rejected the ALJ's penalty recommendations[*2]"for the reasons stated in [DOH's] exceptions" and imposed a penalty of $42,000. Petitioner commenced this CPLR article 78 proceeding in Supreme Court seeking, among other things, annulment of respondent's determination. Since the petition involved a question of substantial evidence, it was transferred to this Court pursuant to CPLR 7804 (g).
Contrary to petitioner's contention, there is no basis to disturb respondent's liability determinations. Where, as here, an agency's determination is made following an evidentiary hearing, this Court's review is "limited to consideration of whether the findings were supported by substantial evidence" (Matter of Wegman v New York State Dept. of Health, 229 AD3d 862, 863 [3d Dept 2024]; see RSRNC, LLC v McDonald, ___ AD3d at ___, 239 NYS3d at 335). Substantial evidence is a "minimal standard" requiring "less than a preponderance of the evidence, and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018] [internal quotation marks and citations omitted]; accord Matter of C & C Tobacco/Chuck's Gas Mart, Inc. v Tompkins County Whole Health, 233 AD3d 1237, 1238 [3d Dept 2024]).
Charge 1 stemmed from the information surveyors obtained during the July 2020 inspection and alleged that petitioner violated 10 NYCRR 400.2 by prematurely resuming outdoor visitation on July 6, 2020 and by allowing visitation to occur in advance of submitting the required NY Forward Safety Plan. 10 NYCRR 400.2 obligates nursing homes licensed by DOH to "comply with all pertinent Federal laws and regulations . . . , applicable State law, . . . and codes, rules and regulations having general application." In support of charge 1, DOH submitted documentary evidence demonstrating that the facility resumed in-person visitation prior to the July 10, 2020 Health Advisory Memo, including an email from the facility's assistant administrator to families, sent on July 1, 2020, advising that the facility was "putting the finishing touches on a new visitation plan that w[ould] take place on [the] front patio." The email confirmed that visitation was set to "commence on Monday, July 6, 2020" and required "[a]ll visitors and residents" to wear a mask. The facility's Patio Visitor Screening Logs — which DOH submitted as evidence during the administrative hearing — documented that over 50 visitors attended patio visits on July 6, 2020. DOH's surveyor notes from the July 23, 2020 inspection included statements demonstrating that visits occurred on at least two additional dates before the facility filed its NY Forward Safety Plan on July 22, 2020. The foregoing constitutes substantial evidence supporting respondent's determination that the facility violated 10 NYCRR 400.2 (see RSRNC, LLC v McDonald, ___ AD3d at ___, 239 NYS3d at 336; Executive Order [A. Cuomo] No. 202.1 [9 NYCRR 8.202.1]).
Petitioner attempts to defend against charge 1 [*3]by emphasizing that the federal Centers for Medicare and Medicaid Services (hereinafter CMS) issued guidance in June 2020 identifying outdoor visitation at nursing homes as a "creative means of connecting residents and family members." However, this did not preempt DOH's March 13, 2020 Health Advisory Memo precluding in-person visitation at New York nursing homes, with limited exceptions, until at least July 15, 2020. Indeed, the CMS guidance explicitly "encourage[d] that any decisions to relax [visitation] requirements or conduct creative alternatives within nursing homes be made in accordance with state and local officials" (emphasis added), and DOH — not CMS — was the agency responsible for promulgating COVID-19 infection control protocols for nursing home facilities in this state during the relevant time frame (see Executive Order [A. Cuomo] No. 202.1 [9 NYCRR 8.202.1]). Petitioner's assertion that it "implemented its outdoor program in order to provide an alternative method to meet the social and emotional needs of [the facility's] residents" also does not constitute a viable defense to charge 1. Although petitioner correctly notes that DOH's March 13, 2020 Health Advisory Memo stated that nursing homes "must provide other methods to meet the social and emotional needs of residents," this statement was made in the same paragraph that restricted visitation at such facilities in the first place and listed "video calls" as one example of an alternative method, thereby demonstrating that the other contemplated methods did not encompass in-person visitation.
Substantial evidence also supports respondent's liability determination under charge 2, which alleged that the facility violated its obligation under 10 NYCRR 415.19 (a) (1) to establish and maintain an infection control protocol designed to "help prevent the development and transmission of disease and infection" by failing to ensure that visitors complied with applicable masking requirements. In that regard, DOH's July 10, 2020 Health Advisory Memo required "residents to wear a facemask or face covering which cover[ed] both the nose and mouth during visitation, if medically tolerated," and "visitors [to] wear a face mask or face covering which covers both the nose and mouth at all times when on the premises of [a nursing home]." In support of this charge, DOH elicited testimony from one of the surveyors who conducted the July 23, 2020 inspection. This witness testified that, while she was in the facility's vestibule observing visitation on that date, she observed two residents and two visitors "not properly wearing a mask," explaining that one of the noncompliant visitors was talking on a cell phone without her mask on and the other was wearing her mask below her chin. The surveyor further testified that that there was nothing in her notes indicating that these visitors had any medical condition exempting them from wearing a facemask. The surveyor's written notes from the July 2020 investigation [*4]were consistent with her observations and also documented a conversation she had with an employee filling in as a visitation screener, who "stated that he . . . was not instructed to ensure [that] masks were worn properly or kept on throughout" patio visits. On this record, there is no basis to disturb respondent's determination to sustain charge 2 (see RSRNC, LLC v McDonald, ___ AD3d at ___, 239 NYS3d at 336).
Contrary to petitioner's contention, the ALJ did not abuse her discretion in granting DOH's motion to amend charge 2 during the March 2021 proceedings. 10 NYCRR 51.6 provides that "[a]ny party may amend or supplement a pleading at any time prior to the submission of the hearing officer's report to the commissioner, or to the appropriate board or council, by leave of the hearing officer, if there is no substantial prejudice to any other party." As originally formulated, charge 2 alleged that petitioner failed to "ensure that all visitors, staff, and residents used facemasks in the facility when there were residents in the facility determined to be positive or presumed positive for COVID-19." DOH sought to strike the italicized language on the ground that no such requirement was necessary to find petitioner liable for failing to ensure that masking protocols were followed, as such protocols applied regardless of whether there were positive or presumed positive COVID-19 cases at the facility. Finding no substantial prejudice from amending the charge as requested, the ALJ granted the motion. The ALJ providently exercised her discretion in this regard (see Matter of Kosich v New York State Dept. of Health, 49 AD3d 980, 982 [3d Dept 2008], appeal dismissed 10 NY3d 950 [2008]), as the amendment rendered the allegations consistent with regulatory requirements and merely removed an element from charge 2 while retaining the factual allegations. Although petitioner claims otherwise, "nothing in this record indicates [that] petitioner's defense strategy would have been different" had there been earlier notice of the amended language (Matter of Mandelstam v McDonald, 229 AD3d 912, 917 [3d Dept 2024]; compare Matter of Murray v Murphy, 24 NY2d 150, 157 [1969]).
Next, charge 4 alleged that petitioner violated Public Health Law § 2803 (1) (a) by refusing to provide DOH surveyors with access to the facility on September 30, 2020. Public Health Law § 2803 (1) (a) authorizes respondent to "conduct periodic inspections" of licensed nursing home facilities within the state. The scope of the inspection "shall include, but not be limited to, a survey to determine compliance by the facility with applicable statutes and regulations" (Public Health Law § 2803 [1] [a]). Insofar as respondent is responsible for ensuring "that elderly and infirm persons entrusted to nursing homes are given the care and protection required by the health laws of this State," such facilities must "always be open to [DOH] inspections designed and planned to [ensure] that the care and protection [*5]mandated by law are actually being furnished" (Uzzillia v Commissioner of Health of State of N.Y., 47 AD2d 492, 497 [2d Dept 1975], appeal dismissed 37 NY2d 777 [1975], 37 NY2d 786 [1975]). "Thus, nursing homes may not insist that inspections be a matter of appointment or that inspection await the clearance of nursing home counsel or that inspection be delayed pending completion of administrative hearings" (id.).
In support of charge 4, DOH elicited testimony from the surveyors who attempted to conduct the inspection on September 30, 2020. The testimony established that a group of approximately seven surveyors proceeded to the facility on that date to perform a "recertification survey and a life safety survey." Although the team was "screened by the security guard at the screening table for temperature and COVID symptoms," the facility's administrator would not permit entry without proof of a negative COVID-19 test despite being shown a letter, dated July 23, 2020, advising that "New York State nursing home surveillance staff [were] subject to the same provisions and standard of weekly testing as New York State nursing home staff." Petitioner eventually proposed an alternative under which the survey team would be permitted entry into the building if the surveyors provided a copy of their identification cards and signed an attestation affirming a negative test result, which would then be cross-referenced with health data maintained in the County's electronic database. The surveyors declined to sign an attestation in this regard and left the premises when a supervisor directed them to do so. Notably, one of the surveyors testified that she was permitted to enter the facility on July 23, 2020 without showing proof of a negative COVID-19 test and there was testimony that, while the team was at the premises on September 30, 2020, two phlebotomists informed them that they had never been asked to provide proof of COVID-19 testing results to gain entry, thereby raising a question as to the sincerity of petitioner's conduct on this date. Based upon the foregoing, there is substantial evidence in the record to support respondent's determination that petitioner violated Public Health Law § 2803 (1) (a) on September 30, 2020 (see Uzzillia v Commissioner of Health of State of N.Y., 47 AD2d at 497).
We also discern no basis upon which to disturb the penalty imposed by respondent. Initially, we reject petitioner's contention that respondent did not adequately set forth his findings of fact when deviating from the ALJ's recommended penalty determinations. Although respondent did not directly set forth his own factual findings in this regard, he imposed the penalties requested in DOH's written exceptions and articulated that he was doing so "for the reasons stated [therein]." Contrary to petitioner's contention, respondent's resort to DOH's written exceptions to explain the reasoning underlying his penalty determinations did not constitute a due process violation[*6], as DOH's written exceptions set forth a detailed analysis in support of the proposed penalties underlying each charge. Thus, by adopting DOH's arguments in this regard, respondent issued findings of fact sufficient for intelligent judicial review (compare Matter of AGA Operating LLC v Zucker, 218 AD3d 1354, 1355-1356 [4th Dept 2023]; Matter of Goohya v Walsh-Tozer, 292 AD2d 384, 384-385 [2d Dept 2002], lv dismissed 99 NY2d 551 [2002]).
Turning to the merits, we recognize that the $42,000 penalty imposed by respondent is over five times the amount recommended by the ALJ. However, respondent is not bound by the ALJ's recommendations and "may make different factual findings and conclusions, provided they are supported by substantial evidence" (Matter of Walker v City of Plattsburgh, 212 AD3d 936, 938-939 [3d Dept 2023] [internal quotation marks and citation omitted]). Pursuant to Public Health Law § 12 (1) (a), "any person who violates, disobeys or disregards any term or provision of [Chapter 45 of the Public Health Law] or of any lawful notice, order or regulation pursuant thereto for which a civil penalty is not otherwise expressly prescribed by law, shall be liable . . . for a civil penalty . . . not to exceed [$2,000] for every such violation." "Judicial review of an administrative penalty is limited to whether the measure or mode of penalty . . . imposed constitutes an abuse of discretion as a matter of law" (Matter of Kelly v Safir, 96 NY2d 32, 38 [2001] [citations omitted]), which occurs only when the penalty is "so disproportionate to the offense as to be shocking to one's sense of fairness" (id. [internal quotation marks and citation omitted]).
Here, the ALJ recommended a total penalty of $4,000 for the violations established under charge 1, finding that DOH did "not submit any evidence to show that visitation took place on any days except July 6 and 22." In its exceptions to the ALJ's findings, DOH argued, among other things, that it was appropriate to impose a penalty of $32,000 under charge 1 — amounting to $2,000 for each of the 16 days between the period of July 6, 2020 and July 22, 2020 — regardless of whether the proof established that visits occurred on each of those days, arguing that charge 1 implicated a "policy-type violation that naturally len[t] itself to a per-day violation analysis." Insofar as the authorities underlying charge 1 required the facility to remain closed for visitation until July 15, 2020 and precluded visitation following this date in the absence of submitting a NY Forward Safety Plan, respondent's acceptance of DOH's "per-day violation" analysis was rational. Given the evidence that the facility opened its outdoor visitation program on July 6, 2020 and did not submit the required NY Forward Safety Plan until July 22, 2020, the $32,000 penalty comported with Public Health Law § 12 (1) (a) and was not an abuse of discretion.
As for the penalty imposed under charge 2, we recognize that, in imposing an $8,000 [*7]penalty under this charge for the four observed violations of the facility's masking requirements during the July 23, 2020 inspection, respondent deviated from the "per-day" violation analysis it accepted under charge 1. In doing so, respondent necessarily accepted DOH's argument, as set forth in its written exceptions to the ALJ's report, that charge 2 implicated a "different type of violation" than charge 1 insofar as it did "not involve the failure to have in place a legally required policy" but, instead, implicated the "failure to ensure that a facility take specific actions required by law or policy" — i.e., to ensure that masks were worn correctly by residents and visitors. DOH reasoned that it was logical in such circumstance to "quantify violations [under charge 2] based on the number of actual occurrences in which the [f]acility fail[ed] to" take required action to ensure that residents and staff were wearing masks properly. In our view, respondent's acceptance of DOH's analysis in this regard was rational and we cannot conclude that the $8,000 penalty imposed under charge 2 was an abuse of discretion as a matter of law. We reach the same conclusion with respect to the $2,000 penalty imposed under charge 4.
Petitioner's remaining contentions, to the extent not explicitly addressed herein, have been considered and found lacking in merit. In light of our determination, petitioner's request for a stay of the underlying administrative determination on review pending the results of this proceeding, made in its brief and without any motion for a more expeditious resolution of that request, is now academic.
Pritzker, Lynch, Powers and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: Four charges were brought against petitioner. The ALJ found that DOH did not sustain its burden of proof on charge 3 and recommended dismissing that charge.